Hilario SANCHEZ

v.

CITY OF HARTFORD, et al.

No. 3:97CV1922(AHN) DW.

United States District Court,
D. Connecticut.

June 23, 1998.

Paul Mpande Ngobeni, East Hartford, CT, for Plaintiff.

Brian Leaming, Halloran & Sage, Hartford, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS

NEVAS, District Judge.

The plaintiff, Hilario Sanchez ("Sanchez"), brings this action pursuant to 42 U.S.C. §§ 1981 and 1983 against the defendants, City of Hartford ("Hartford"), Kathleen Palm ("Palm"), Shelley R. Sheppard ("Sheppard"), and Judith A. Reynolds ("Reynolds"),[1] for procedural due process violations and race and national origin discrimination in connection with the denial of Sanchez's request for an early withdrawal of the proceeds of his deferred compensation plan. Now pending before the court is the defendants Motion to Dismiss Sanchez's First, Second and Third Claims for Relief for failure to state a claim.

For the reasons stated below, this motion [doc. # 17] is GRANTED in part and DENIED in part. In addition, Sanchez is GRANTED leave to amend his complaint to state his First and Third Claims for Relief with greater specificity.

### STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all factual allegations in the complaint and must construe any well-pleaded factual allegations in the plaintiff's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir. 1991). A court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Still v. DeBuono*, 101 F.3d 888, 891 (2d Cir. 1996). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer*, 416 U.S. at

---

1. Napier is Hartford's Treasurer, and Palm is the Assistant Treasurer. (*See* First Am. Compl. ¶¶ 8–9.) Shepard and Reynolds both work in the Office of the Treasurer as Administrative Analysts. (*See id.* ¶¶ 10–11.) All four individual defendants are alleged to have "personally engaged in, approved, condoned, and acquiesced" in the unlawful conduct charged in the complaint and are sued in their individual and official capacities. (*See id.* ¶¶ 8–11.)

236, 94 S.Ct. 1683). In deciding such a motion, consideration is limited to the facts stated in the complaint or in documents attached thereto as exhibits or incorporated therein by reference. *See Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991).

## FACTS

For the purposes of this Rule 12(b)(6) motion, the following facts alleged in Sanchez's First Amended Complaint are accepted as true.

Sanchez is a Puerto Rican male who resides in South Windsor, Connecticut. (*See* First Am. Compl. ¶ 6.) He has been employed by Hartford as a full-time firefighter since June, 1982. (*See id.* ¶ 12.) At all times relevant to the complaint, Sanchez was enrolled in a deferred compensation plan established by Hartford through ITT Hartford Insurance Group. (*See id.* ¶ 13.) The plan allows an employee to voluntarily authorize a portion of his wages to be withheld and not taxed so that it may be invested for payment upon retirement. (*Id.*)

On or about January 28, 1994, Sanchez and his wife bought their first home in South Windsor. (*See id.* ¶ 14(a).) They reside there with their five year old child. (*Id.*) At that time, Sanchez and his wife were both employed, and they both contributed to the total household income. (*Id.*)

In April, 1994, Mrs. Sanchez became pregnant with her second child. (*See id.* ¶ 14(b).) On November 17, 1994, due to hypertension and bouts of early labor pain, her physician ordered her to stay in bed and directed her to discontinue her employment. (*Id.*) Mrs. Sanchez did as her physician instructed and stopped working. (*Id.*)

On January 22, 1995, Mrs. Sanchez gave birth to Alec Hilario ("Alec"). (*See id.* ¶ 14(c).) Alec was born with an acute case of hematoma—a bleeding vein located between his scalp and skull—that required immediate hospitalization. (*Id.*) On February 16, 1995, after Alec developed a serious infection as a result of the hematoma, he was hospitalized and underwent surgery. (*Id.*) Then, at six months of age, Alec's severe allergies to milk and eggs surfaced. (*Id.*) According to his allergist, Dr. Rosen, his food allergies "had the potential to manifest themselves as a potentially life-threatening anaphylaxis even if he was only exposed to a small amount of milk or eggs." (*Id.*)

Due to Alec's medical condition, specifically the fact that his allergies required his eating habits to be carefully supervised, Mrs. Sanchez was not able to return to her previous job and was not able to find another employer who would accommodate her schedule. (*See id.* ¶ 14(d).) In fact, she remained unemployed for several months, ultimately taking a part-time job for ten to fifteen hours per week so that she could be home with Alec when Sanchez was at work. (*See id.* ¶¶ 14(d), (e).)

Alec's illness had a devastating financial impact on the family. (*See id.* ¶ 14(f).) They suffered a drastic decrease in their monthly income and were therefore unable to pay their monthly mortgage as well as their other monthly expenses. (*Id.*) Sanchez had no insurance, savings or assets that he could use to cover the family's monthly expenses. (*Id.*)

On November 20, 1996, Sanchez sent a letter to Hartford informing it of his son's medical condition and his wife's employment situation and requesting a "hardship withdrawal" from his deferred compensation plan. (*See id.* ¶ 15; Compl. Ex. B.) In response, Sanchez received instructions from Hartford which explained exactly how to apply for such a withdrawal. (*See* First Am. Compl. ¶ 16.)

On January 2, 1997, Sanchez's mortgage company instituted foreclosure proceedings. (*See id.* ¶ 15.) Then, on February 9, 1997, after he had been unsuccessful in his numerous efforts to contact Hartford's Office of the Treasurer regarding the status of his request for an early withdrawal, Sanchez received a letter formally denying his application. (*See id.* ¶ 16.) The letter simply stated that "there was not sufficient documentation to justify a 'hardship withdrawal.'" (*Id.*) The letter neither explained why Sanchez's application was denied, nor informed him that he had the right to request a hearing, a review of the decision, or even a meeting concerning the decision. (*Id.*) In fact, Sanchez was never afforded the opportunity to meet with a

representative from Hartford so that he could better explain his reasons for requesting the early withdrawal. (*Id.*)

Nonetheless, on February 25, 1997, Sanchez submitted a request for reconsideration of his application for the hardship withdrawal. (*See id.* ¶ 17.) Again, on March 18, 1997, because he had not received a response, he asked Hartford to reconsider its initial decision and grant him a hardship withdrawal. (*Id.*) This time, Hartford denied his request for reconsideration. (*Id.*)

In this action, Sanchez claims that he met the statutory requirements for a hardship withdrawal. (*See id.* ¶ 25.) He alleges that Hartford has a policy and practice of denying employees who request hardship withdrawals a hearing or a meaningful opportunity to be heard. (*See id.* ¶ 18.) Specifically, Sanchez alleges that Hartford denies applicants the following procedural protections:

(a) timely and adequate notice detailing reasons for the adverse action; (b) an opportunity to appear personally at the hearing, present evidence and oral arguments to confront and cross-examine adverse witnesses; (c) the right to a decision rendered by an impartial decision maker; (d) a right to have the decision based solely on rules of law and evidence presented at the hearing; and (e) a right to a statement by the decision maker setting forth the reasons for the decision and the evidence upon which it is based[.]

(*Id.* ¶ 19.) He further claims that the defendants denied him access to documents, objects and tape recordings which would have both informed him of the evidence that they relied upon in denying his application and allowed him to rebut such evidence. (*See id.* ¶ 20.) Lastly, Sanchez alleges that Hartford has a policy of discriminating against Hispanic persons by denying them the procedural protections articulated above. (*See id.* ¶ 21.)

Sanchez sets forth several claims pursuant to 42 U.S.C. §§ 1981 and 1983. In his First Claim for Relief, he alleges that the defendants engaged in intentional discrimination on the basis of his race and national origin. (*See id.* ¶ 27.) In his Second Claim for Relief, he contends that the defendants denied his request for a hardship withdrawal with-

out good cause and without the procedural safeguards guaranteed him by the Due Process Clause of the Fourteenth Amendment. (*See id.* ¶ 38.) Finally, in his Third Claim for Relief, he maintains that the defendants, in denying him the requisite due process, treated him differently than other similarly situated white employees, thereby violating his rights under the Equal Protection Clause of the Fourteenth Amendment. (*See id.* ¶ 47.)

## DISCUSSION

The defendants move to dismiss Sanchez's claims pursuant to Rule 12(b)(6). They argue that Sanchez (1) had no constitutionally protected property interest in the early withdrawal of his deferred compensation funds; (2) has failed to identify any rights protected by section 1981, and, to the extent that he does enumerate such rights, has not supported his claims with sufficient factual allegations; (3) only makes a bald and conclusory allegation in support of his equal protection claim; and (4) cannot bring his section 1981 claim against Hartford because such claims are not maintainable against a municipality.

### I. *Property Interest in Deferred Compensation Funds*

In order to state a claim for deprivation of procedural due process in violation of section 1983, a plaintiff must allege that the government deprived him of a legitimate property right without due process of law. *See Greene v. Town of Blooming Grove*, 935 F.2d 507, 510 (2d Cir.1991); *Fusco v. Connecticut*, 815 F.2d 201, 205 (2d Cir.1987). This property right must be substantial enough to justify the protection of federal law. *See A. Aiudi & Sons v. Town of Plainville*, 862 F.Supp. 737, 741 (D.Conn.1994) (holding that a mere breach of contract does not constitute a constitutional deprivation). The range of property interests protected by the Due Process Clause is not boundless. *Id.* (stating, "it is clear that the circumstances in which a contract will give rise to a constitutionally protected interest are drastically limited"). As the Supreme Court stated in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972),

[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Id.* at 577, 92 S.Ct. 2701.

The defendants claim that Sanchez has failed to establish the existence of a constitutionally protected property interest. According to the defendants, Sanchez's deferred compensation plan is not such a property interest because it is subject to specific statutory guidelines which severely limit the circumstances under which an employee is entitled to early withdrawal of the plan's proceeds. *See* 26 U.S.C. § 457(d). The court, at least at this preliminary stage, is not persuaded that the claim should be dismissed on this basis.

According to the statute governing deferred compensation plans, a participant must relinquish his right to access the proceeds of the plan until retirement as consideration for the significant tax deferred privileges afforded by the plan. Specifically, the statute provides:

[U]nder the plan amounts will not be made available to participants or beneficiaries earlier than—(i) the calendar year in which the participant attains age 70½, (ii) when the participant is separated from service with the employer, or (iii) when the participant is faced with an unforeseeable emergency . . . .

26 U.S.C.A. § 457(d)(1)(A) (West 1998 Supp.). Where, as here, the participant seeks early withdrawal of the proceeds of his plan under the "unforeseeable emergency" exception, he must establish a "severe financial hardship . . . resulting from a sudden and unexpected illness or accident of [himself] or of a dependent, loss of [his] property due to casualty, [or] other similar extraordinary and unforeseeable circumstances arising

as a result of events beyond [his] control." 26 C.F.R. § 1.457–2(h)(4).

The defendants argue that, because determination of whether a situation satisfies the unforeseeable emergency exception "will depend upon the facts of each case," 26 C.F.R. § 1.457–2(h)(4), no participant can have a legitimate claim of entitlement to obtain early withdrawal of the proceeds of a deferred compensation plan.[2] Sanchez contends that Hartford cannot deny him minimal procedural protections simply because it is vested with the responsibility of determining on a case-by-case basis whether employees satisfy the unforeseeable emergency exception defined in the regulations.

■ While the Second Circuit has not explicitly dealt with this issue, it has ruled on several analogous ones. In *Basciano v. Herkimer*, 605 F.2d 605, 608 (2d Cir.1978), the Court held that an employee's interest in disability retirement benefits qualified as a property interest protected by the Due Process Clause. *See id.* at 609. The Court reasoned that because there was a statutory scheme which detailed the eligibility requirements for such benefits, a claim of eligibility under the statute gave rise to "a valid claim of entitlement." *Id.; see also Russell v. Dunston*, 896 F.2d 664, 668 (2d Cir.1990) (holding that "disability retirement is a constitutionally protected property interest"). The Court extended this analysis to pension benefits in *Winston v. City of N.Y.*, 759 F.2d 242 (2d Cir.1985), holding that "pension rights vest at the time the employee bec[omes] a member in the system." *Id.* at 248 (citation and internal quotation marks omitted). However, in *Costello v. Fairfield*, 811 F.2d 782 (2d Cir.1987), the Court distinguished *Basciano* as a case involving the denial of basic retirement benefits and held that the entitlement to an *increase* in such benefits, as provided for by a collective bargaining agreement, was not a property inter-

---

**2.** At oral argument, the defendants also claimed that, if employers were required to grant due process hearings to every employee who requested an early withdrawal, many more employees would make such requests. The court, however, is not persuaded. Under 26 U.S.C. § 457(a), a plan participant who receives early withdrawal of his deferred compensation funds, must then

pay income tax on those funds for the taxable year in which he receives them. As Sanchez's counsel pointed out, this penalty nullifies the inherent benefits of a deferred compensation plan and thus would sufficiently deter additional employees from making early withdrawal requests.

est protected by the Due Process Clause. *See id.* at 784; *see also Danese v. Knox,* 827 F.Supp. 185, 193 (S.D.N.Y.1993) (following *Costello* and holding that an employee's right to receive sick leave under a collective bargaining agreement was not a "property right" subject to due process protection).

Contrary to the defendants' contention, the facts in this case are more similar to those in *Basciano* than to those in *Costello.* Here, Sanchez's alleged entitlement to the early withdrawal of the proceeds of his deferred compensation plan arises, not from his contract for the deposit of such funds, but from the federal statute that prescribes the rules governing deferred compensation plans. While the court in *Costello* held that the provisions of a collective bargaining agreement were analogous to a simple contract that did not give rise to a constitutionally protected property interest, the court in *Basciano* specifically held that a *statutory scheme* providing for the payment of retirement benefits did, in fact, give rise to a protected entitlement. Here, Sanchez's claim is more than a simple breach of contract claim. It is based on specific statutory and regulatory provisions which, he maintains, gave him an entitlement to early withdrawal of his deferred compensation funds.

Assuming, as the court must, that the facts in Sanchez's complaint are true and that he satisfied the regulatory definition of "unforeseeable emergency," and recognizing that the court can dismiss a claim only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim which would entitle him to relief," *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99, the court must allow Sanchez's due process claim to remain.[3] As the Seventh Circuit held in *Cushing v. City of Chicago,* 3 F.3d 1156 (7th Cir.1993), if

it turns out that Sanchez had no more than a *unilateral expectation* of early withdrawal of the proceeds of his deferred compensation plan, this issue can be revisited at the summary judgment stage, or at trial. *See id.* at 1161. At this stage, in analyzing whether Sanchez had a constitutionally protected property interest, "[t]he underdeveloped record ... does not compel either conclusion." *Id.; see also Jackam v. Hospital Corp. of America Mideast Ltd.,* 800 F.2d 1577, 1581 (11th Cir.1986) (stating, "[o]ver and over again—but apparently not often enough— this [c]ourt has stated, explained, reiterated, stressed, rephrased, and emphasized one simple long established, well-publicized Rule of Federal Procedure: A motion to dismiss for failure to state a claim should not be granted unless it appears to be a certainty that [p]laintiff would not be entitled to recover under any state of facts which could be proved in support of his claim") (quoting *Cook & Nichol, Inc. v. Plimsoll Club,* 451 F.2d 505, 506 (5th Cir.1971)).

## II. *Failure to State Section 1981 Claim*

Under section 1981,

all persons ... shall have the same right to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.... For the purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C.A. §§ 1981(a), (b) (West 1994). To state a § 1981 claim, the complaint must allege facts in support of three elements: (1)

---

**3.** The court is hesitant to unequivocally recognize a constitutionally protected property interest in the proceeds of a deferred compensation plan. When drafting 26 U.S.C. § 457, Congress specifically gave employers complete discretion in determining whether employees qualified under the unforeseeable emergency exception. If employers are now required to provide every employee who requests an early withdrawal with a due process hearing, there is at least a possibility that many employers will no longer establish such plans because they will be too costly to maintain.

Balancing these considerations, however, is the court's concern that employers may abuse their discretion to determine eligibility for early withdrawals and thereby arbitrarily or discriminatorily make such determinations without regard to the requirements set down by federal statute. There may be instances where an employee has met the statutory definition of unforeseeable emergency and is thus entitled to an early withdrawal, but is summarily denied such an entitlement without explanation or review.

that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination related to one of the activities listed in the statute. *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993).

The defendants claim that Sanchez has not identified any of the rights specified in section 1981. Alternatively, they claim that, to the extent that Sanchez articulated a right enumerated in the statute, his allegations of intentional discrimination are conclusory and unsupported by sufficient factual allegations.

■ With respect to the first argument, the court is not persuaded. Sanchez's complaint, arising from his contractual agreement to enroll in Hartford's deferred compensation plan, does enumerate rights covered by Congress's 1991 amendment of section 1981. That amendment defines the phrase "make and enforce contracts" to "include[ ] ... the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *See Humphrey v. Council of Jewish Federations*, 901 F.Supp. 703, 711 (S.D.N.Y.1995) (recognizing that section 1981 "covers acts of discrimination which occur in the performance of a contract and not just those that result in a change in the contract relationship"); *Lewis v. J.C. Penney Co.*, 948 F.Supp. 367, 371 (D.Del.1996) (stating that, in light of Congress's 1991 amendment, section 1981's "make and enforce contracts" clause should not be read narrowly). Thus, in alleging that the defendants discriminated against him because he is Hispanic and thereby denied him procedural protections and substantive rights afforded to other white employees, Sanchez has enumerated rights protected by section 1981. *See Rose v. The Morning Call, Inc.*, No. Civ. A. 96–2973, 1997 WL 158397, *6 (E.D.Pa. March 28, 1997) (holding that "plaintiff can raise an inference of intentional racial discrimination by alleging ... selective enforcement of contract terms [or] departures from procedural norms").

■ The defendants' second argument, however, has merit. To survive a motion to dismiss, a section 1981 claim must "specifical-ly allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994); *see also Garg v. Albany Industrial Dev. Agency*, 899 F.Supp. 961, 967 (N.D.N.Y. 1995) (relying on *Yusuf*), *aff'd*, 104 F.3d 351 (2d Cir.1996). Conclusory allegations will not suffice. *See Garg*, 899 F.Supp. at 967. "[A] complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of [section 1981], fails to state a claim under Rule 12(b)(6)." *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978) (per curiam).

While Sanchez alleges racial discrimination, he offers no facts to support this claim. He simply states that the defendants had a policy of denying Hispanic persons notice informing them of their right to a hearing and "an opportunity to appear personally at a hearing, present evidence and oral arguments and to confront and cross-examine any adverse witnesses." (*See* First Am. Compl. ¶ 21.) He also states that "the defendants' policies and practices were interpreted in such a way as to require a denial of plaintiff's equal employment benefits solely on the basis of race or national origin." (*Id.* ¶ 30.) Such conclusory allegations are not sufficient.

There are no factual allegations in the complaint which connect the defendants' alleged selectivity with Sanchez's race or national origin. *See Yusuf*, 35 F.3d at 713 (dismissing a section 1981 claim because the plaintiff failed to connect the defendant's selectivity with racial bias). While Sanchez claims that he was denied a hearing and early withdrawal of his deferred compensation funds because of his race or national origin, he does not indicate which white employees, if any, were granted hearings and/or early withdrawals. *See id.* (stating that the plaintiff "offered no reason to suspect that his [differential treatment] had anything to do with his race"). He also makes no factual allegations which give rise to an inference that the defendants' actions were motivated by racial animus. *See Crespo v. Sielaff*, No. 90 Civ. 7525(JFK), 1992 WL 170678, *3

(S.D.N.Y. July 7, 1992) (stating that, for a section 1983 discrimination claim to survive a motion to dismiss, the complaint must allege some discriminatory intent or racial animus), *aff'd*, 990 F.2d 623 (2d Cir.1993). Thus, Sanchez's First Claim for Relief is dismissed. Sanchez may, however, amend the complaint to restate this claim with more specificity—alleging facts that connect the defendants' treatment of Sanchez and other Hispanics to their race or national origin.

### III. *Failure to State Equal Protection Claim*

■■■ The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). An equal protection claim which does not challenge the validity of a law, but challenges the selective enforcement of that law, is subject to a two-part test: (1) the plaintiff, compared with others similarly situated, must have been selectively treated; and (2) the selective treatment must have been motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. *See LaTrieste Restaurant & Cabaret, Inc. v. Port Chester*, 40 F.3d 587, 590 (2d Cir.1994); *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir.1995); *Crowley v. Courville*, 76 F.3d 47, 52–53 (2d Cir.1996). Conclusory allegations of selective treatment are not sufficient. *See Contractors Against Unfair Taxation Instituted on New Yorkers v. The City of N.Y.*, No. 93 Civ. 4718(KMW), 1994 WL 455553, *6 (S.D.N.Y. Aug.19, 1994). Rather, a plaintiff "must allege purposeful and systematic discrimination by specifying instances in which [the] plaintiff was singled out for unlawful oppression in contrast to others similarly situated." *Id.* (quoting *Albert v. Carovano*, 851 F.2d 561, 573 (2d Cir.1988)) (internal quotation marks omitted).

■■■ While Sanchez does allege that the defendants treated him and other Hispanics differently from similarly situated white employees, he does not specify exactly how they treated him differently. *See Mazurek v. Wolcott Bd. of Educ.*, 815 F.Supp. 71, 77 (D.Conn.1993) (dismissing plaintiff's equal protection claim because her complaint alleged no facts to support her "blanket allegation" that the defendants arbitrarily and capriciously treated her differently than other similarly situated candidates). As the court stated in *DeLoreto v. Ment*, 944 F.Supp. 1023 (D.Conn.1996), under section 1983's heightened pleading requirements, a complaint must allege the "specific conduct that violated [the plaintiff's] rights to equal protection, the time and place of the conduct, and the identity of the official who engaged in the conduct." *Id.* at 1033; *see also Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987) (stating that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"). Even assuming that Sanchez identifies such differential treatment by alleging through his allegations that the defendants refused his request for early withdrawal and failed to grant him a hearing, (*see* First Am. Compl. ¶ 45), he still must make specific factual allegations showing both the existence of a disparity between the treatment of whites and Hispanics, and that racial animus caused the disparity. *See Crespo*, 1992 WL 170678, at *3 (stating that "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the action") (citation and internal quotation marks omitted). At a minimum, Sanchez must specify exactly how and when he was treated differently from other similarly situated white employees. *See Contractors Against Unfair Taxation*, 1994 WL 455553, at *7 (dismissing plaintiffs' equal protection claim because they "cite no instances in which they are singled out for disparate treatment, and allege no facts at all in support of their allegation that [others] received different treatment").

Nonetheless, the court is not persuaded that Sanchez can prove *no* set of facts enti-

tling him to relief and recognizes that, at this stage, *proof* of factual allegations is irrelevant. Thus, balancing Fed.R.Civ.P. 8(a)'s liberal pleading requirements with its demand that the complaint "give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests," Sanchez's Third Claim for Relief is dismissed. Sanchez may, however, amend his complaint to restate this claim with factual allegations detailing how he was treated, how other similarly situated white employees were treated, and how these treatments differed.

IV. *Section 1981 Claim Against Hartford*

Lastly, the defendants argue that under the Supreme Court's ruling in *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 733, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), which held that section 1983 provides the "exclusive remedy for violation of rights guaranteed in section 1981," Sanchez cannot maintain its section 1981 claim against Hartford. However, at oral argument, Sanchez's counsel represented that he was only pursuing the section 1981 against the individual defendants and *not* against Hartford. Thus, based on Sanchez's counsel's representation that the section 1981 claim against Hartford is withdrawn, this count is DISMISSED, and the defendants Motion to Dismiss based on *Jett* is DENIED as moot.

## CONCLUSION

For the reasons stated above, the defendants' Motion to Dismiss [doc. # 17] is GRANTED as to Sanchez's First and Third Claims for Relief, and DENIED as to Sanchez's Second Claim for Relief. In addition, Sanchez is GRANTED leave to amend his First Amended Complaint to restate his First and Third Claims for Relief with greater specificity, in accordance with the dictates of this ruling. Sanchez is not, however, granted leave to add any additional claims. The amended complaint must be filed on or before July 21, 1998.