The ECONOMIC OPPORTUNITY COMMISSION OF NASSAU COUNTY, INC.; CEDC, Inc.; and John Kearse, Plaintiffs,

v.

COUNTY OF NASSAU; Incorporated Village of Hempstead; Incorporated Village of Hempstead Community Development Agency; Clinton C. Boone; Tina Hodge–Bowles; John Courtney; James Dunne; Anne Martin; James Garner; Alvina Gray; Glen Spiritis; Charles Theofan; Thomas S. Gulotta; Owen B. Walsh; Kenneth Cynar; Joseph W. Ryan, Jr.; Harrison J. Edwards; and Donald Campbell, Defendants.

No. 97–CV–6014.

United States District Court, E.D. New York.

July 20, 2000.

Law Offices of Frederick K. Brewington, Hempstead, NY, for plaintiffs.

Snitow & Cunningham, LLP, New York City, by Stewart J. Epstein, Deanna H. Arden, of counsel, for defendants Nassau County, Thomas Gulotta, Owen Walsh, Kenneth Cynar, Joseph Ryan, Jr., Harrison Edwards, Donald Campbell.

Matthew Feinberg, West Hempstead, NY, for defendant Incorporated Village of Hempstead.

Certilman, Balin, Adler & Hyman, LLP, East Meadow, NY, by Brian J. Davis, of counsel, for defendants Incorporated Village of Hempstead Community Development Agency, Clinton Boone, Tina Hodge–Bowles, John Courtney, James Dunne, Anne Martin, James Garner, Alvina Gray, Glen Spiritis, Charles Theofan.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves allegations by the Plaintiffs, the Economic Opportunity Commission of Nassau County ("EOC"), a non-profit community action agency; CEDC, Inc., an economic development arm of the EOC; and John Kearse, CEO of EOC and CEDC, that the Defendants, the County of Nassau, the Village of Hempstead, the Hempstead Community Development Agency and various officials thereof, violated the Plaintiffs' constitutional rights to free speech, equal protection, and freedom of association under 42 U.S.C. § 1983 and 1985. Presently before the Court are motions by three groups of Defendants to dismiss the second amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.

## BACKGROUND

This Court has previously considered this case, and the recitation of the facts set forth in *Economic Opportunity Commission of Nassau County, Inc. v. County of Nassau*, 47 F.Supp.2d 353 (E.D.N.Y.1999) is incorporated herein by reference.

Briefly, the Plaintiffs allege that in 1992, the Defendants intentionally interfered with efforts by EOC and CEDC to renovate the Hempstead Bus Terminal Building using $6 million in funds issued to the County and Village by the U.S. Department of Housing and Urban Development ("HUD"). The Plaintiffs contend that the Defendants required them to permit an unqualified general contractor to supervise the project and that delays and inadequate construction followed. According to the Plaintiffs, the delays occasioned by the Defendants' hand-picked contractor prevented them from completing their renovations on schedule and cost them hundreds of thousands of dollars in lost rent for office space in the Terminal. The Plaintiffs contend that the Defendants wilfully imposed an incompetent contractor on them and protected the contractor from termination in retaliation for the Plaintiffs' activities on behalf of minority groups and the poor, as well as their vocal opposition to certain Village and County actions.

In 1996, the County received permission from HUD to refinance the original loan on the Terminal project. HUD required the refinancing to be completed within six months. According to the complaint, the County "needlessly prolonged the negotiations," demanding increased control and oversight over the project, and simultaneously "launched an investigation of the operations of Plaintiffs designed to curtail their political advocacy." Eventually, the six month limit placed by HUD on the refinancing lapsed without an agreement having been reached.

In the meantime, EOC had fallen behind on its tax payments on the Terminal building. In November 1996, the County issued a Notice to Redeem on the property, and 8 months later, took a tax deed to the property, eventually taking control of the property on July 22, 1997. According to the Plaintiffs, other similarly situated commercial property owners with tax deficien-

cies were not subject to such rapid foreclosure action, and the Plaintiffs contend that the County's haste was motivated by its desire to retaliate against the Plaintiffs for their community activities on behalf of minorities and the poor. Somewhat paradoxically, the Plaintiffs also contend that the County was not in any haste as it waited to commence foreclosure proceedings until it was sure that any foreclosure sale would result in a deficiency judgment against the Plaintiffs, thus allowing the County to also seize other properties owned by the EOC to satisfy the judgment.

Finally, EOC alleges that the County is failing to abide by an agreement to reimburse it for certain legal fees that EOC alleges are covered by a Social Services Agreement with the County.

The second amended complaint contains six causes of action. The first cause of action based on 42 U.S.C. § 1983 ("Section 1983"), alleges that the Defendants violated the Plaintiffs' First Amendment rights to free speech and free association, and their Fourteenth Amendment rights to equal protection, by interfering with the Terminal renovation project; by blocking the Plaintiffs refinancing efforts; by subjecting to Plaintiffs to stricter treatment regarding the deficient taxes than other commercial operations; and by refusing to reimburse EOC for legal expenses in accordance with the Social Services Agreement, all because of the Plaintiffs' advocacy on behalf of minorities and the poor. The second cause of action appears to allege a *Monell* claim under Section 1983 against the municipal Defendants on the same basis and relying on identical allegations as the first cause of action. The third cause alleges that the Defendants engaged in a conspiracy under 42 U.S.C. § 1985 and 1986 to violate the Plaintiffs' civil rights based on the Plaintiffs' advocacy on behalf of minorities. The fourth cause of action assets a claim for intentional interference with prospective economic advantage, relating to the Plaintiffs' receipt of the HUD financing. The fifth

cause of action is less than clear, asserting that the Defendants "deprived CEDC of its own free will" in performing the Terminal renovation, CEDC's tax deficiency "resulted solely" from these actions by the Defendants, and that therefore, the Plaintiffs are entitled to a judgment setting aside the tax deed and cancelling all of CEDC's tax indebtedness on the property to both the County and Village. Finally, the sixth cause of action claims that "by virtue of the deceitful and inequitable conduct" of the Defendants in obstructing the HUD refinancing package, the tax deed should be vacated.

The Defendants now move to dismiss the amended complaint pursuant to Fed. R.Civ.P. 12(b)(6). The "County Defendants," consisting of Nassau County, County Executive Thomas Gulotta, Special Assistant to the County Executive Kenneth Cynar, County Attorney Owen Walsh, Special Assistant to the County Attorney Joseph Ryan, Jr., Special Counsel to Nassau County Dept. of Housing and Development Harrison Edwards, and Commissioner of the Office of Housing Donald Campbell, argue that portions of the Section 1983 claims are time-barred; that the freedom of association claims fail to allege a constitutionally protectible associational relationship; that their free speech claims fail to allege knowledge of the County Defendants of the protected speech and any causal connection between the speech and the allegedly retaliatory actions; that the equal protection causes of action do not identify any other individuals that are similarly situated; that the Section 1985 claims fail to allege the elements of a conspiracy; and that the claims against the individual Defendants should be dismissed as not alleging personal involvement. The County Defendants also contend that some of the claims by the Plaintiffs are barred by the Tax Injunction Act, 28 U.S.C. § 1341.

The Village of Hempstead moves to dismiss the claims by Plaintiff Kearse, arguing that as an individual, he lacks standing

to pursue claims belonging to the EOC and CEDC. The Village also joins in the arguments of its co-Defendants in moving to dismiss the Section 1983 causes of action.

Defendants Village of Hempstead Community Development Agency ("CDA"), Defendants Clinton Boone, Tina Hodge-Bowles, John Courtney, James Dunne, Anne Martin, and James Garner, all board members of the CDA; and Defendants Alvina Gray, Glen Spiritis, and Charles Theofan, all employees of the CDA (collectively, "the CDA Defendants"), move to dismiss the conspiracy claims, alleging that the Plaintiffs failed to sufficiently allege the elements of a conspiracy. The CDA Defendants also claim that the free speech and equal protection claims should be dismissed on the grounds that the CDA's actions were "objectively reasonable," in light of the EOC's tax deficiencies; that the CDA board members are entitled to legislative immunity for their actions; and that the cause of action for interference with economic advantage should be dismissed because the Plaintiffs have no third-party relationship with HUD other than through the CDA. Finally, the CDA Defendants' brief confusingly includes an argument captioned "the fifth claim for relief must be dismissed," but refers repeatedly in the body of the argument to "the sixth claim for relief" as failing to state a recognizable claim under Federal or State law, then refers in the conclusion of the brief to the fifth cause of action.

### DISCUSSION

The court may not dismiss a complaint under Fed.R.Civ.P. 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *King v. Simpson*, 189 F.3d 284, 286 (2d Cir.1999); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). The court must accept as true all factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff. *Id.; Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997). The issue to consider is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995). The court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999).

### A. As to the Section 1983 free speech claim

To establish a First Amendment retaliation claim under section 1983, a plaintiff must show: (i) conduct by the plaintiff protected by the First Amendment, and (ii) that the defendant's conduct was motivated by or substantially caused by the plaintiff's exercise of free speech. *Board of County Commissioners v. Umbehr*, 518 U.S. 668, 676, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996); *Greenwich Citizens Committee, Inc. v. Counties of Warren and Washington Indust. Dev. Agency*, 77 F.3d 26, 30 (2d Cir.1996); *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir.1994); *Housing Works, Inc. v. City of N.Y.*, 72 F.Supp.2d 402, 422 (S.D.N.Y. 1999). Circumstantial evidence of retaliation may be found when defendants are aware that plaintiff has engaged in protected speech and defendants' challenged behavior closely follows that protected speech. *McCullough v. Wyandanch Union Free School Dist.*, 187 F.3d 272, 280 (2d Cir.1999), *citing Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995); *Housing Works*, 72 F.Supp.2d at 422–23. In addition, a plaintiff can also show retaliatory intent by establishing unequal treatment, or an ongoing campaign of adverse action. *See e.g. Gagliardi*, 18 F.3d at 195 (motive shown by evidence that Village repeatedly refused the plaintiffs' requests to enforce

zoning codes and ordinances over 9 year period); *Housing Works,* 72 F.Supp.2d at 424–26.

Here, the Plaintiffs have set forth a chronology dating back to 1981, specifying various instances of protected speech they have engaged in. Some, such as the entries for 1981 and 1982, are far too remote in time and isolated from further events to support any inference of retaliation. Other allegations, such as claims that the Plaintiffs clashed with "the Republicans" in 1995 and 1996, do not relate directly to any of the parties in this case.

With one exception, the remaining relevant entries focus entirely on various statements that the Plaintiffs have made concerning the County government. There are absolutely no allegations that the Plaintiffs spoke out against any of the CDA Defendants at any time. Thus, it is difficult to infer any causal connection between the Plaintiffs' protected speech and any action by the CDA Defendants. While the Plaintiffs might suggest that the CDA Defendants are aligned in interest with the County Defendants, and thus could be expected to retaliate against the Plaintiffs for criticizing the County Government, there are no facts in the complaint that make such a suggestion and no basis for this Court to draw such an inference. Thus, any First Amendment retaliation claim against the CDA Defendants must fail.

There is only a single reference in the amended complaint to the Plaintiffs speaking out against the Village: that in 1993, the Plaintiffs opposed the contractor assigned to the Terminal renovation project who happened to be related to Village Mayor Garner. However, according to the allegations in the second amended complaint, all actions subsequent to this event involve wrongdoing only by the County. Therefore, any First Amendment retaliation claims against the Village also fail.

■ Viewing the evidence in the light most favorable to the Plaintiffs, the Court finds that the amended complaint does allege sufficient facts to infer a retaliatory motive by Defendants Gulotta, Walsh, Cynar, and Ryan. According to the factual chronology, the EOC accused the County of discrimination in 1997 when the County withdrew some unspecified funds from EOC's budget; it led picketing outside of the County Legislature and threatened litigation to open the proceedings to minorities; and it publicly opposed a County proposal to redistribute EOC's services to other agencies. These events, all denoted as occurring in 1997, are close in time to the foreclosure of the County's tax lien on the Terminal building, and could support an inference that the County's taking of the tax deed to the property was retaliatory. Moreover, viewed in the light most favorable to the Plaintiffs, the failure by the County to tap available interim HUD financing for CEDC and to reach agreement on the refinancing of the Terminal project's loans could suggest a pattern of antagonism by the County towards the EOC, ultimately resulting in the tax foreclosure. *Accord Housing Works,* 72 F.Supp.2d at 428–29 (defendant's success in thwarting conferral of benefits on plaintiff supported finding of retaliatory inference). Thus, the Court finds that the second amended complaint sufficiently alleges a cause of action under Section 1983 for retaliation against the Plaintiffs for their exercise of free speech by the individual County Defendants: Gulotta, Walsh, Cynar, and Ryan. While Gulotta is not specifically named individually in any of the meaningful factual allegations, the Court will assume that, as Chief Executive of the County, the various accusations involving "the County" in the first cause of action refer to Gulotta individually.

However, despite being named in the caption of the case and identified as a party, the second amended complaint contains absolutely no allegations involving Defendant Edwards, and thus, the claims against him must be dismissed. Likewise, there is only a single allegation involving Defendant Campbell: namely, that HUD wrote to Campbell in 1997 expressing its

desire to proceed with the refinancing. The mere fact that Defendant Campbell received a letter does not state a cause of action against him for retaliation.

Therefore, to the extent that the Plaintiffs causes of action under Section 1983 are premised on claims for retaliation against them for exercising their free speech rights, those claims as against the Village and the CDA Defendants are dismissed. The motion by Defendants Gulotta, Walsh, Cynar, and Ryan to dismiss this cause of action is denied.

**B. As to the freedom of association claims**

■ The Supreme Court has recognized two types of associational rights: an individual's right to associate with others in intimate relationships and a right to associate with others for purposes of engaging in activities traditionally protected by the First Amendment, such as speech and other expressive conduct. *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir.1999) *citing Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), *Birmingham v. Ogden*, 70 F.Supp.2d 353, 368 (S.D.N.Y.1999). Expressive association claims, such as the Plaintiffs' claims that they have been retaliated against for their associations with minority groups and the poor, are considered to be the equivalent of free speech claims, since the expressive conduct alleged is inextricably linked to protected speech. *See Birmingham*, 70 F.Supp.2d at 368–69. Thus, to the extent that the Plaintiffs' freedom of association claims rely on these sorts of allegations, they must be dismissed as duplicative. *Id.*

■ To the extent that the Plaintiffs contend that their free association rights were violated because the County "compelled" them to associate with the general contractor on the Terminal renovation or the CDA, such a claim fails to state a cause of action. The County certainly did not demand that the Plaintiffs accept the contractor or the CDA as members of their own organization. *Cf. Boy Scouts of America v. Dale*, —— U.S. ——, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000) ("the forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints"). The Court can only conceive the Plaintiffs' "compelled association" claim to simply be an alternate phrasing of a free speech retaliation claim—that the County deliberately sought to interpose other parties into the Terminal renovation project to punish EOC for its public advocacy—and thus dismisses that claim as redundant. Any other view of the Plaintiffs' free association cause of action must be interpreted as simply a complaint that an award of government money unconstitutionally requires the recipient to associate with the government's chosen contractors and administrators.

Accordingly, the Plaintiffs' Section 1983 claims sounding in denial of freedom to associate are dismissed.

**C. As to the equal protection claims**

■ To state a claim under the Equal Protection clause, a plaintiff must allege that: (i) the person, compared with others similarly situated, was selectively treated; and (ii) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injure a person. *See e.g. Crowley v. Courville*, 76 F.3d 47, 52–53 (2d Cir.1996); *Zahra v. Town of Southold*, 48 F.3d 674, 683–84 (2d Cir.1995); *LaTrieste Restaurant & Cabaret, Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir.1994). As this court previously noted:

> The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distin-

guishing cases, the "relevant aspects" are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely or necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

*Economic Opportunity Commission*, 47 F.Supp.2d at 370, *citing Equus v. Town of Southampton*, 37 F.Supp.2d 582, 597–98 (E.D.N.Y.1999) and *Kirschner v. Zoning Board of Appeals of Valley Stream*, 924 F.Supp. 385, 391 (E.D.N.Y.1996).

■ After dismissing the Plaintiffs' Equal Protection claims in the original complaint for failing to identify others alleged to be similarly situated, the Plaintiffs amended the complaint to identify several properties that were also part of the same tax lien sale as the Terminal building, yet which were not subjected to the taking of a tax deed by the County.

The County disputes that any of the properties listed is "similarly situated" to the Plaintiffs' situation, pointing out various distinguishing characteristics of each parcel. While the affidavit submitted by the County strongly suggests that the properties cited as similar by the Plaintiffs are readily distinguishable, the Court declines to make such an evidentiary finding at this stage of the litigation, particularly where the evidence cited by the County is not incorporated by reference in the complaint.

However, even if the Plaintiffs have alleged that they were treated differently from others similarly situated, the second amended complaint struggles to assert that such differential treatment was motivated by an impermissible purpose. The only impermissible purpose suggested in the complaint is that the County acted in malicious bad faith to drive EOC out of business. While it seems highly unlikely that the County, possessing a malicious intent to injure the EOC, would twice apply for multi-million dollar loan guarantees from HUD to benefit EOC, the Court must allow the Plaintiffs an opportunity to prove their claims. Therefore, to the extent that the Plaintiffs allege that their Equal Protection rights were violated in the County's taking of a tax deed, the County's motion to dismiss the Section 1983 claim is denied. However, for the reasons stated above, the claims against County Defendants Edwards and Campbell are dismissed.

On the other hand, to the extent that the Plaintiffs seek to assert Equal Protection claims regarding the administration of the HUD funds, they have not identified any others "similarly situated" in this regard. As this Court previously noted, "the plaintiff must adequately allege that it was similarly situated to other entities which were actively pursuing Section 108 loan guarantees through the County, but were treated differently." 47 F.Supp.2d at 370. While the Plaintiffs contend that this places too difficult a burden on them, they do not contend that any other agencies have sought and obtained HUD funding through the County. Indeed the Plaintiffs do not even contend that any other agencies have sought and obtained other funds of any kind from the County.

The Plaintiffs argue that they should be relieved from the obligation of alleging others similarly situated, and that they should be considered "a class of one," relying on *Esmail v. Macrane*, 53 F.3d 176, 180(7th Cir.1995). However, *Esmail* does not stand for the proposition that an Equal Protection claim can be made out in the absence of any others similarly situated. Indeed, the court in *Esmail* noted several times that the plaintiff was complaining that other similarly situated persons were treated differently from him. *See e.g.* 53 F.3d at 178 (the complaint alleges that the defendant was "maintain[ing] a policy and practice of routinely granting new liquor licenses as well as renewing existing licenses requested by persons who had engaged in the same or ... more serious infractions than Esmail was charged with, yet were punished lightly or not at all")

*and* 179 ("If the liquor dealers enumerated in Esmail's complaint committed worse infractions than he was charged with but were let off with lighter or no sanctions, this was unequal treatment.") The only unusual aspect of *Esmail* is that the plaintiff claimed that the unequal treatment was not motivated by his membership in a protected class, but merely because of the defendant's malicious, bad faith intent to injure him. 53 F.3d at 179 ("The distinctive feature here, which the district judge did not discuss, is that the unequal treatment is alleged to have been the result solely of a vindictive campaign by the mayor.").

■ The proposition that a plaintiff can establish an Equal Protection claim by showing that he was selectively treated because of a malicious intent to injure is not novel; it was specifically articulated as one way of establishing the second element in an Equal Protection claim by this Court in *Economic Opportunity Commission,* 47 F.Supp.2d at 370 (plaintiff must allege unequal treatment and "(ii) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, *or malicious bad faith intent to injure a person* ) (emphasis added), and is routinely cited throughout this circuit." *See e.g. Crowley,* 76 F.3d at 52–53; *Zahra,* 48 F.3d at 683–84; *Katz v. Stannard Beach Ass'n.,* 95 F.Supp.2d 90, 95 (D.Conn.2000); *Birmingham,* 70 F.Supp.2d at 371; *Sanchez v. City of Hartford,* 10 F.Supp.2d 162, 169 (D.Conn.1998); *Interboro Inst. v. Maurer* 956 F.Supp. 188, 199 (N.D.N.Y.1997). Nevertheless, the first element, proof that the plaintiff has been treated differently from others similarly situated, remains an essential component of such a claim. *Brown v. City of Oneonta,* 195 F.3d 111, 119 (2d Cir.1999). The Equal Protection clause is essentially a direction that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d

313 (1985). Without an allegation that other persons similarly situated were treated differently, the "equal" portion of the Equal Protection clause becomes meaningless.

At oral argument, the Plaintiffs' counsel also cited to *Village of Willowbrook v. Olech,* —— U.S. ——, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), for the proposition that they could maintain an Equal Protection challenge without identifying other similarly situated individuals who were afforded more favorable treatment. However, despite the Supreme Court's reference to a "class of one" in *Willowbrook,* it is quite clear that the plaintiff there had identified other similarly situated individuals who were afforded more favorable treatment. *See* 120 S.Ct. at 1075 ("that the Village intentionally demanded a 33–foot easement as a condition of connecting [the plaintiff's] property to the municipal water supply where the Village required only a 15–foot easement from *other similarly situated property owners.*") (emphasis added). Thus, *Willowbrook* does not help the Plaintiffs prove an Equal Protection claim on their search for HUD funds where they have failed to allege the existence of any other similarly situated individuals.

Accordingly, since the Plaintiffs have failed to allege that other persons seeking loan funding from the County were given better treatment, the plain allegations that the County maliciously obstructed the Plaintiffs' funding are insufficient to allege a violation of the Equal Protection clause.

Therefore, to the extent that the Plaintiffs' Section 1983 causes of action assert claims against the County Defendants for retaliation based on the exercise of their First Amendment rights or against the County Defendants for violations of the Equal Protection clause relating to the taking of a tax deed to the Terminal building, the County Defendants' motion to dismiss is denied as to Defendants Gulotta, Walsh, Cynar, and Ryan. The motions to dismiss the Section 1983 claims based on

freedom of association or the Equal Protection clause and all Section 1983 claims against the Village and CDA Defendants are dismissed.

### D. As to the municipal liability claims

The Plaintiffs second cause of action seeks to assert municipal liability under Section 1983. This Court previously dismissed these claims as failing to proffer any facts in support of the conclusory allegations that the Defendants' conduct amounts to a custom or policy. 47 F.Supp.2d at 370–71. The second amended complaint reiterates the dismissed claim practically verbatim. Accordingly, the second cause of action is dismissed for the reasons given in this Court's prior decision.

### E. As to the conspiracy claims

■ The third cause of action alleges that the Defendants conspired under 42 U.S.C. § 1985 to violate the Plaintiffs' civil rights. In order to plead a claim under Section 1985, a plaintiff must allege (i) a conspiracy; (ii) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, . . .; and (iii) an act in furtherance of the conspiracy; (iv) whereby a person is . . . deprived of any right of a citizen of the United States. *Brown*, 195 F.3d at 123; *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir.1999).

■ In addition, the plaintiff must establish that the conspiracy was motivated by some racial or perhaps otherwise class-based invidious discriminatory animus. *Roach*, 165 F.3d at 137, *citing Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir.1993); *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 592 (2d Cir.1999); *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir.1996). However, the mere assertion of a racial motivation is insufficient to state a claim, *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 419 (2d Cir. 1999), and a complaint which alleges this motivation in only conclusory, vague, or general allegations cannot withstand a motion to dismiss. *Id.; Gyadu, supra.*

■ Here, while the Plaintiffs allege that the conspiracy against them was motivated by their outspoken advocacy on behalf of African–Americans and Hispanics, they allege no specific facts to support such a conclusion. In *Posr*, the Second Circuit dismissed a conspiracy claim on the grounds that the plaintiff had only offered conclusory allegations of racial motivation, noting that "[h]e does not allege, for example, that the court officers who arrested him made any verbal references to his race or that they improperly treated other African–Americans in ways similar to that in which they treated him." 180 F.3d at 419. A similar result must apply here, where the Plaintiffs's assertions of impermissible motive rely on nothing more than the fact that they speak out for minorities. *Accord Thomas*, 165 F.3d at 147 (mere assertion that plaintiff was black was insufficient to allege racial motivation for conspiracy against him).

Therefore, the Section 1985 claims must be dismissed. Similarly, because a claim under 42 U.S.C. § 1986 for failure to prevent the violation of a person's civil rights cannot exist in the absence of a viable Section 1985 claim, *Brown*, 195 F.3d at 123; *Posr*, 180 F.3d at 420, the Plaintiffs' Section 1986 claim must be dismissed as well.

### F. As to the claim for interference with economic advantage

The essence of the Plaintiffs' claim for interference with prospective economic advantage is difficult to grasp. The second amended complaint alleges that "By the aforementioned conduct, COUNTY, VILLAGE, and CDA interfered with the probability of Plaintiffs' future economic benefit, namely federal HUD refinancing monies that were earmarked for the Plaintiffs."

■ In order to state a claim for tortious interference with prospective economic advantage under New York State law, a plaintiff must show (i) business relations with a third party; (ii) defendants' interference with those business relations; (iii) defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (iv) injury to the relationship. *Purgess v. Sharrock,* 33 F.3d 134, 142 (2d Cir.1994), *citing Burba v. Rochester Gas & Elec. Corp.,* 139 A.D.2d 939, 528 N.Y.S.2d 241 (4th Dept. 1988); *PPX Enterprises v. Audiofidelity Enterprises, Inc.,* 818 F.2d 266, 269 (2d Cir.1987).

■ Here, the HUD refinancing monies at issue were not available to the Plaintiffs directly, as they are not "public entities." 42 U.S.C. § 5308(q)(3). To the extent that the Plaintiffs had a business relationship with any party relating to the HUD money, that party was the CDA. There is no allegation that the Plaintiffs dealt in any way with HUD, nor is there any allegation that the CDA or any other Defendant attempted to influence HUD to reject the application for funding. Stripped to its essentials, the CDA was a lender and the Plaintiffs were borrowers, and the negotiations over the terms by which the CDA would lend money to the Plaintiffs were unsuccessful. Because these allegations fail to allege any actions by the Defendants towards third parties with whom the Plaintiffs had business relationships, the fourth cause of action for interference with prospective economic advantage must be dismissed. *National Westminster Bank, U.S.A. v. Ross,* 130 B.R. 656, 678 (S.D.N.Y.1991) (allegation that lender made fraudulent statements to induce borrower into taking out a loan does not state a claim for interference with economic advantage since no third party was involved); *Piccoli A/S v. Calvin Klein Jeanswear Co.,* 19 F.Supp.2d 157, 167–68 (S.D.N.Y.1998) (claim dismissed where "the defendants' alleged conduct concededly was not directed towards any third par-

ty with whom Piccoli had an existing or prospective business relationship").

### G. As to the causes of action seeking to cancel the tax deed

The fifth and sixth causes of action in the second amended complaint do not clearly specify the nature of the claim asserted. As best the Court can surmise, these causes of action seek a declaratory judgment and additional equitable relief such as voiding the loan indebtedness of the Plaintiffs to the CDA, and a cancellation of the Plaintiffs' tax obligations to the Village and County.

■ The Declaratory Judgment Act, 28 U.S.C. § 2201, merely provides a remedy where none previously existed; it does not supply an independent cause of action. *In re Joint Eastern and Southern District Asbestos Litigation,* 14 F.3d 726, 731 (2d Cir.1993), *citing Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *Richards v. Select Ins. Co.,* 40 F.Supp.2d 163, 169 (S.D.N.Y. 1999). In other words, a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief. *In re Asbestos Litigation,* 14 F.3d at 731.

The Court here is at a loss to discern the underlying substantive claim alleged by the Plaintiffs in the fifth and sixth causes of action. In the fifth cause of action, the Plaintiffs seek relief based on an allegations that the defendants "deprived CEDC of its own free will" in the expenditure of funds on the Terminal renovation project. The Court has already dismissed any claim that the Defendants "took" the HUD funds from the Plaintiffs, 47 F.Supp.2d at 369, and the Court cannot conceive any other viable cause of action that could be raised by the fifth cause of action.

The sixth cause of action alleges that certain Defendants "acted in 1994 to deceive Plaintiffs that they were ready, willing and able to complete the refinancing

with HUD," when in fact they had no intention of doing so. At best, this cause of action seems to allege fraud. However, it fails to plead the specific elements of fraud with the specificity required by Fed. R.Civ.P. 9(b), and therefore fails to state a substantive cause of action.

Accordingly, the fifth and sixth causes of action are dismissed for failure to state a claim under Rule 12(b)(6).

**H. As to leave to replead**

While the Plaintiffs have not requested leave to replead, this Court in any event denies such leave. The Court has twice given the Plaintiffs an opportunity to refine, sharpen, and specify their claims, *Mooney v. Vitolo*, 435 F.2d 838, 839 (2d Cir.1970) (leave to replead denied after two prior amendments to complaint failed to cure defects), and yet the second amended complaint still remains vague and confusing in some places. Despite this Court's strong caution to the Plaintiffs that "perfunctory or cosmetic changes" to the amended complaint would not be sufficient, 47 F.Supp.2d at 371, the second amended complaint indicates that the Plaintiffs apparently did not adequately heed this warning. They failed to make any meaningful changes to causes of action that had already been found to be insufficient, such as the *Monell* claim, *see* 47 F.Supp.2d at 370–71, and continued to assert separate causes of action against individuals who were completely omitted from the factual allegations. Moreover, while the Plaintiffs may have excised certain claims from the second amended complaint after the court dismissed them, they left the underlying factual allegations that supported those claims in the complaint, forcing the Court to guess whether the Plaintiffs were continuing to pursue or reassert these claims.

In light of the two prior efforts to remedy the defects in the complaint and the Plaintiffs' failure, in part, to comply with the previous order of the Court, leave to replead the second amended complaint is denied.

**CONCLUSION**

For the foregoing reasons, except to the extent the first cause of action alleges a cause of action under Section 1983 against Defendants Gulotta, Walsh, Owens, and Cynar for retaliation against the Plaintiffs for exercising their right to free speech and for violation of the Equal Protection Clause relating to the County's taking of a tax deed to the Plaintiffs' property, the motions to dismiss the Section 1983 cause of action are GRANTED.

The motions to dismiss the second cause of action, alleging municipal liability under *Monell* are GRANTED.

The motions to dismiss the third cause of action under Sections 1985 and 1986 are GRANTED.

The motions to dismiss the fourth cause of action for interference with prospective economic advantage are GRANTED. The motions to dismiss the fifth and sixth causes of action for declaratory and other relief are GRANTED.

The caption of the case is amended to read:

ECONOMIC OPPORTUNITY COMMISSION OF NASSAU COUNTY, INC.; CEDC, INC.; and JOHN L. KEARSE, Plaintiffs v. THOMAS GULOTTA; OWEN B. WALSH; KENNETH CYNAR; and JOSEPH W. RYAN, JR., Defendants.

**SO ORDERED**