Jagadish B. GARG and Pushpa
Garg, Plaintiffs,

v.

ALBANY INDUSTRIAL DEVEL-
OPMENT AGENCY and City
of Albany, Defendants.

No. 94–CV–1371.

United States District Court,
N.D. New York.

Oct. 12, 1995.

Jagadish B. Garg, Pushpa Garg, Schenectady, NY, pro se.

Vincent J. McArdle, Corporation Council, Albany, New York (Thomas A. Shepardson, of counsel), for defendants.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

Plaintiffs bring a sizeable collection of civil rights claims against defendants, all of which. appear to stem from plaintiffs' contention that defendants discriminated against them on the basis of their race and national origin, and seek $10,000,000 in actual and punitive damages. Defendants move for summary judgment pursuant to Fed.R.Civ.Pro. 56(c) or, in the alternative, dismissal of plaintiffs' complaint pursuant to Fed.R.Civ.Pro. 12(b)(6). Defendants' motions are granted.

### I. Background

#### A. Factual Allegations

Plaintiffs' claims pertain to a series of business and legal dealings with the defendants. In short, plaintiffs claim that defendants discriminated against them in the course of negotiating a mortgage of the plaintiffs' hotel, opposing plaintiffs' Chapter 11 reorganization plan, trying to recover a debt from plaintiffs after waiving all claims to it, discussing the assumption of the mortgage with potential buyers of the hotel, assessing the hotel for property tax purposes, and transferring title to the hotel after a bankruptcy sale.

#### 1. The Plaintiffs and Their Businesses

Plaintiffs are American citizens of Asian Indian descent. They are the general partners of Thruway Investments ("TI"), a limited partnership formed in 1983. Plaintiffs also formed P. & J.G. Enterprises ("PJG"), a close corporation, to operate and manage property owned by TI. The Thruway House (the "Hotel"), an Albany Hotel, was among the property owned by TI and managed by PJG. TI also owned a long-term lease on the real property where the hotel is situated.

#### 2. The Mortgage

Although plaintiffs' complaint mentions loan and mortgage negotiations with Defendant AIDA separately, these transactions appear to be closely related. It appears that at some point in 1987 or early 1988, plaintiffs decided to renovate their hotel in an attempt to obtain a franchise from a national hotel chain. To secure the necessary funds, they

applied for a mortgage loan from Defendant AIDA. According to plaintiffs, they informed Defendant AIDA that because they needed to complete repairs by a certain date in order to attract a franchise, time was of the essence. After what plaintiffs describe as a "long loan application process[ ] and unexcusable delays," Defendant AIDA issued a loan commitment letter to them on April 7, 1988. Plaintiffs and Defendant AIDA eventually settled on a closing date of July 17, 1989. On that day, plaintiffs, on behalf of TI, secured a $500,000 mortgage on the Hotel from Defendant AIDA. Additional security for the $500,000 mortgage consisted of TI's leasehold interest in the land surrounding the Hotel, plaintiffs' personal guarantee, and PJG's corporate guarantee.

Also on July 17, 1989, Defendant AIDA made an initial loan disbursement to TI of $340,000. Either at that time or at some later date, Defendant AIDA allegedly told plaintiffs that it would not disburse all of the loan funds until plaintiffs completed the Hotel renovations. Plaintiffs claim that they then tried and failed to secure a bridge loan. On November 6, 1989, Defendant AIDA made a second disbursement of $100,000. A few months later, it made a final disbursement of $30,000. Plaintiffs claim that Defendant AIDA never disbursed the remaining $30,000. They also claim that because of Defendant AIDA's delays in disbursing the loan funds, despite plaintiffs' request for speedy payment, they failed to complete the renovations on time. Failure to complete the renovations on time allegedly led to a national hotel chain's denial of plaintiffs' franchise bid. Plaintiffs then defaulted on their mortgage payments.

According to plaintiffs, Defendant AIDA's discriminatory conduct caused all of the delays that interfered with the smooth and timely completion of these transactions.

### 3. Bankruptcy

Plaintiffs filed for bankruptcy on October 26, 1990. They claim that although they submitted a workable Chapter 11 reorganization plan to the bankruptcy court, defendants successfully opposed it on March 28, 1992, with an affirmation containing deliberately false statements. Four months later, the bankruptcy court allegedly converted plaintiffs' bankruptcy case into a Chapter 7 case and appointed Philip Danaher as trustee of the debtors' estate.

On August 18, 1992, the trustee put all of TI's assets, including the Hotel, up for public auction. Plaintiffs suggest that at the time of the auction, the Hotel had a fair market value of $4.85 million. Compl. ¶ 43. According to plaintiffs, representatives of Defendant AIDA and two other "mortgage holders of TI's debt, Bank of Baroda and Jack Schlieffer" attended the auction and purchased the Hotel for $25,000 plus an amount equal to the balance of the mortgage, for a total of roughly $3.3 million. Plaintiffs and Defendant AIDA disagree over whether the sale was conditional upon the buyers' release the mortgage and waiver of all claims against the debtors. Compl. ¶¶ 44–45; Ds' Mem. 16. The bankruptcy judge allegedly approved the sale of the Hotel, on these conditions, to the buyers on August 24, 1992.

Plaintiffs further allege that despite Defendant AIDA's waiver of all of its claims against plaintiffs, and in violation of the bankruptcy provisions in 11 U.S.C. § 723, Defendant AIDA brought suit against plaintiffs in New York State court to recover the debt. The state lawsuit, plaintiffs claim, was motivated by Defendant AIDA's "malice, invid[ious] intent and bad faith to harm the plaintiff and thus to deprive them of their civil rights and privileges guaranteed under the U.S. Constitution." Compl. ¶ 49.

### 4. Assumption of the Mortgage

Plaintiffs allege that on at least two occasions after they filed for bankruptcy and before the sale of the Hotel at public auction, defendants interfered with sales contracts plaintiffs executed with parties who had agreed to buy the Hotel and to assume the Hotel mortgage. On one occasion, plaintiffs claim, they executed a sale contract with the Friendship Hotel of Albany and received the bankruptcy court's approval for the sale. Plaintiffs allege that during meetings between Friendship and AIDA officers in 1991 and 1992, which plaintiffs were forbidden to attend, Defendant AIDA revealed information to the buyers that led eventually to their

refusal to complete the sale. The disclosure of this information was, according to plaintiffs, "unconscionable, unreasonable, and discriminatory." Compl. ¶ 87.

### 5. Assessments

Plaintiffs allege that prior to the bankruptcy filing, they made several requests to Defendant City of Albany (the "City") to reduce the property assessment of the Hotel. The City refused. During the bankruptcy hearings, one of the defendants allegedly testified that the Hotel was worth significantly less than $5 million. Plaintiffs claim that after the bankruptcy filing, they again asked the City for a reduction, but the City refused, in apparent deference to its assessor's claim that the Hotel was worth $5 million. Nevertheless, plaintiffs allege, one year after the sale of the Hotel to the secured creditors, one of Defendant AIDA's white representatives applied to the same City assessor for a reduction of the assessment and promptly secured a thirty-three per cent reduction. Compl. ¶ 17. Plaintiffs claim that in the course of these assessment activities, the defendants' discriminated against plaintiffs, causing them losses of $5 million. Compl. ¶ 18.

### 6. Title Transfer

On November 30, 1992, the secured creditors who had purchased the Hotel at the bankruptcy auction allegedly transferred title, via the bankruptcy trustee, to Beige Plane Ltd. Plaintiffs contend that this transfer released their liability as guarantors of the mortgage debt because it materially altered their rights under the mortgage agreement. They also contend that Beige Plane is a dummy corporation created by Defendant AIDA and the other two secured creditors "for the sole purpose of concealing the fact" that the purchasing group consisted of these parties. Compl. ¶ 62. Plaintiffs claim that the creation of Beige Plane, Ltd. and the transference of title to that company was fraudulent, deceitful, and "motivated by invid[ious] intent to harm the plaintiff and to deprive them of their civil rights, property rights guaranteed under the U.S. Constitu-

tion and laws of the U.S. Gov[er]nment." Compl. ¶ 66.

### B. Legal Rules and Standards

### 1. Rule 12(b)(6) Motions to Dismiss *Pro Se* Litigants' § 1983 Claims

Plaintiffs bring each cause of action under 42 U.S.C. § 1983. This civil rights statute requires plaintiffs to allege that someone acting under color of state law violated their constitutional or federal statutory rights. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). When examining a § 1983 complaint, the Court must determine whether the plaintiff has alleged facts which, if proved, would constitute an actionable deprivation of a federal right. *Robinson v. City of Mount Vernon*, 654 F.Supp. 170, 172 (S.D.N.Y.1987). The Court should not grant a Rule 12(b)(6) motion to dismiss unless it appears clear that the plaintiff cannot in any way establish a set of facts to sustain his claim which would permit relief. *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Bass v. Jackson*, 790 F.2d 260, 262 (2d Cir.1986).

When determining the legal sufficiency of a claim, the Court must view the facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Federal courts are prohibited from applying a "heightened pleadings standard" to § 1983 cases.[1] *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Moreover, the Court must afford a *pro se* plaintiff "every favorable inference arising from his *pro se* status, as well as from his position as a nonmovant on ... motions to dismiss." *Hall v. Dworkin*, 829 F.Supp. 1403 (N.D.N.Y.1993). The Supreme Court also requires federal courts to interpret *pro*

---

1. *Leatherman* discussed the prohibition of a "heightened pleading standard" in relation to

§ 1983 claims against municipalities only.

*se* complaints more liberally than those filed by attorneys. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972). Nonetheless, complaints based on civil rights statutes must include specific allegations of facts showing a violation of rights "instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987).

### 2. Rule 56(c) Motions for Summary Judgment

 Under Fed.R.Civ.Pro. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *on remand,* 807 F.2d 44 (3d Cir.1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985) *cert. denied* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

The Court has examined plaintiffs' complaint in light of the preceding considerations.

## II. Discussion

Plaintiffs ground their causes of action in a number of constitutional and federal statutory provisions: the Fifth Amendment, the Fourteenth Amendment, 11 U.S.C. § 723 and 42 U.S.C. §§ 1981, 1982, 1983, and 1985. They also allege that the defendants deprived them of their "civil rights, property rights, and due process of [l]aw" through "intentional discrimination, gross negligence, deceit, fraud and misrepresentation, malice, interference with third party contracts and unjust enrichment." Compl. p. 1.

The Court is cognizant of its duties to interpret *pro se* complaints liberally and to construe factual allegations in the light most favorable to the plaintiffs. Its duties do not include, however, replacing spume with substance. Rather than restate plaintiffs' entire mélange of conclusory allegations and legal authority in a comprehensible manner, the Court will only address those of plaintiffs' claims that it is able to identify as having some basis in law and fact.

### A. § 1981

 Plaintiffs seem to claim that defendants violated 42 U.S.C. § 1981, which guarantees to all persons within the jurisdiction of the United States equal rights "to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." To state a § 1981 claim, the plaintiff must allege facts to support the following three elements: 1) that the plaintiff is the member of a racial minority; 2) that the defendant had an intent to discriminate on the basis of race; and 3) that the discrimination concerned one or more of the activities enumerated in the statute. *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993). More specifically, in order to survive a motion to dismiss his § 1981 claim, a plaintiff must allege with specificity facts sufficient to show or raise a plausible inference that the defendant purposefully discriminated against him because of the plaintiff's race. *Waldron v. Rotzler,* 862 F.Supp. 763, 768–69 (N.D.N.Y. 1993) (citations omitted). Plaintiffs' complaint contains only conclusory allegations that defendants intentionally discriminated against them with respect to any of the activities enumerated in § 1981 because of plaintiffs' race. Their § 1981 claim is thus incomplete.

### B. § 1982

 Plaintiffs claim that defendant violated 42 U.S.C. § 1982, which guarantees every United States citizen "the same right .. as is enjoyed by white citizens ... to

inherit, purchase, lease, sell, hold, and convey real and personal property." To state a claim under § 1982, the plaintiff must allege with specificity facts sufficient to show or raise a plausible inference of 1) the defendant's racial animus; 2) intentional discrimination; and 3) that the defendant deprived plaintiff of his rights because of his race. *Waldron,* 862 F.Supp. at 769.

Plaintiffs support their only apparent § 1982 claim with allegations that the City Tax Assessor refused to reduce his tax assessment of the hotel when plaintiffs owned it, but agreed to do so when approached by a white representative of the subsequent buyer. Defendants argue that even if these allegations are true, 28 U.S.C. § 1341 prevents them from asserting their § 1982 claim in federal court. This statute, popularly known as the Tax Injunction Act, forbids the federal district courts to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

In *Long Island Lighting v. Town of Brookhaven,* 889 F.2d 428 (2d Cir.1989), the plaintiff brought a § 1983 action against the defendant seeking declaratory, injunctive, and monetary relief. The plaintiff claimed that the defendant violated the plaintiff's equal protection and due process rights by systematically and intentionally assessing the plaintiffs' property too highly, relative to the fair market value of other real property in the same tax district. The Court stated that "[b]ecause New York provides several remedies which afford [the plaintiffs] an opportunity to raise all constitutional objections to the real property taxes imposed, both comity and the Tax Injunction Act bar access to the federal court." *Id.* at 431. *See also Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981) (holding that principle of comity bars federal § 1983 suit for allegedly unconstitutional administration of state tax system).

Defendants in this case cite *Long Island Lighting* for the proposition that plaintiffs cannot bring their tax claim in federal court because they have adequate remedies available in state court. Plaintiffs have not brought to the Court's attention any reasons for which the available state remedies would be procedurally inadequate. *Id.* at 431. Nor have they suggested why the principle of comity is inapposite in this case. Therefore, plaintiffs' § 1982 claim based on defendants' allegedly discriminatory assessment of taxes is dismissed for lack of subject matter jurisdiction. *See* Fed.R.Civ.Pro. 12(h)(3).

## C. § 1983

### 1. Custom or Policy

In the renowned § 1983 case *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a municipality can incur § 1983 liability if its allegedly unconstitutional action implements or executes a municipal policy or custom. *Id.* at 690–91, 98 S.Ct. at 2035–36. A municipality, however, "cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691, 98 S.Ct. at 2036. That is, a municipality cannot incur § 1983 liability merely by employing someone who violates a plaintiff's federal rights. Subsequent Supreme Court decisions have nevertheless established that a municipal official to whom state law grants final decision- or policymaking authority can trigger municipal § 1983 liability with a single edict or act. *St. Louis v. Praprotnik,* 485 U.S. 112, 123–27, 108 S.Ct. 915, 924–26, 99 L.Ed.2d 107 (1988); *Pembaur v. Cincinnati,* 475 U.S. 469, 480–84, 106 S.Ct. 1292, 1298–1301, 89 L.Ed.2d 452 (1986); *see also Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037.

Plaintiffs allege in their complaint that the "defendants as a matter of policy, practice, and custom failed to sanction, [discipline] and supervise their senior employees in engaging in unlawful conduct of [violations] of the civil rights of United States citizens of color." Compl. ¶ 9. Such conclusory language, unsupported by any specific factual allegations, is insufficient to state a § 1983 claim for inadequate supervision. *See, e.g., Fonte v. Board of Mgrs. of Continental Towers Condominium,* 848 F.2d 24, 25–26 (2d Cir.1988) (holding that civil rights complaint cannot survive motion to dismiss

unless it makes specific factual allegations indicating deprivation of rights; insufficient to allege that defendant engaged in certain conduct "because of" race). As with the great majority of their discrimination claims against defendants, plaintiffs support this one with mere speculation, conjecture and inference.

In response to defendants' memorandum pointing out some of the flaws in their complaint, plaintiffs attempt to show that under *Praprotnik* and *Pembaur,* their complaint indeed states a claim under § 1983. However, the complaint mentions only one of the defendant's employees by name—Thomas Shepardson, assistant corporation counsel for the City—and contains no allegations about how he exercised any final decision-making authority he may have possessed to adopt unconstitutional municipal policies that the City applied to plaintiffs in violation of § 1983. *See* Compl. ¶ 42. The complaint thus fails to state a claim based on the theory of liability espoused in *Praprotnik* and *Pembaur.*

■ In opposition to defendants' motions, plaintiffs filed an affidavit that specifies more of defendants' officials by name and attempts to link three of them to decisions that allegedly subject the City to § 1983 liability. Because plaintiffs filed their affidavit in opposition to defendants' motions and not as an amendment to their complaint, Fed.R.Civ. Pro. 12(b) prevents the Court from considering it for purposes of deciding defendants' 12(b)(6) motion. *See Fonte,* 848 F.2d at 25–26. The Court will assume for the sake of argument that the complaint states a claim and consider the affidavit only for purposes of deciding defendants' 56(c) motion for summary judgment.

■ Plaintiffs' affidavit again mentions Mr. Shepardson and claims that he engaged in a collusive bidding scheme during the public auction of the Hotel. The affidavit fails entirely to link Mr. Shepardson's role in the alleged scheme to any decision he may have made that triggered § 1983 liability for the City. These allegations therefore fail to raise a genuine issue of material fact.

■ The affidavit also mentions Vincent McArdle, Jr., Chief Corporation Counsel for both defendants. It states that Mr. McArdle interfered with plaintiffs' sale of the Hotel to a prospective buyer and opposed plaintiffs' Chapter 11 reorganization plan. Again, plaintiffs' allegations fail to raise a genuine issue with respect to the material facts of whether Mr. McArdle has final decision-making authority and if so, whether he exercised it to adopt unconstitutional municipal policies that defendants applied to plaintiffs in violation of § 1983.

■ Finally, plaintiffs' affidavit fleshes out the complaint by alleging that Keith McDonald, the City's Tax Commissioner, was the official who refused plaintiffs' request to reduce his property tax assessment of the Hotel, but granted the subsequent request of a white person representing the Hotel buyers. This is the closest plaintiffs come to sufficiently alleging, or to raising a genuine issue with respect to the material fact, that a City official with final decision-making authority exercised it in a manner that exposed the City to § 1983 liability.

■ However, plaintiffs fail to allege that state law accords Mr. McDonald final authority with respect to tax assessments. Therefore, in light of *Monell*'s rules for municipal liability under § 1983, plaintiffs' complaint fails to state a claim on which relief can be granted and even if it did, the allegations in plaintiffs' complaint and affidavit fail to raise a genuine issue of material fact. Moreover, the Court lacks jurisdiction over this tax claim for the reasons cited in the earlier discussion of 42 U.S.C. § 1982.

Plaintiffs' affidavit names other officials employed by defendants, but fails to allege which of them had final decision-making authority and which of them who possessed it, if any, exercised it to adopt unconstitutional municipal policies that defendants applied to plaintiffs in violation of § 1983. *See Brasch v. Koch,* 1988 WL 156812 (S.D.N.Y.1988). Therefore, none of these allegations raises a genuine issue with respect to these material facts.

### 2. Abuse of Process

In 1992, Defendant AIDA sued plaintiffs in state court to recover on a debt they allegedly owed as guarantors of the Hotel mortgage note. The New York Supreme Court granted Defendant's motion for summary judgment pursuant to CPLR § 3213. Ps' Exs. W, X. Plaintiffs argue that by filing the action, Defendant AIDA committed "malicious abuse of wrongful legal proceedings," as opposed to malicious prosecution or malicious abuse of process. Ps' Mem. 13. As the Court is unfamiliar with any cause of action known as "malicious abuse of wrongful legal proceedings," it must treat plaintiffs' claim as one for abuse of process.

The Second Circuit recently stated that malicious abuse of process will not support a § 1983 claim. *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992). Prior to *Spear*, the Second Circuit held out the possibility that a civil suit might support a § 1983 claim if it subjected the plaintiff to a conscience-shocking "misuse of the legal process so egregious as to work a deprivation of a constitutional dimension." *Easton v. Sundram*, 947 F.2d 1011, 1018 (2d Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992).

Defendant AIDA filed a claim against plaintiffs to recover a debt. Plaintiffs failed to respond, allegedly because of their former lawyer's inaction, and the court granted defendants' motion for summary judgment. Even if malicious abuse of process supports a § 1983 claim and even if, as plaintiffs contend, defendant AIDA had already released its claims against plaintiffs before it filed the state court action, none of plaintiffs' allegations indicate that the suit subjected them to a conscience-shocking deprivation of any constitutional rights. Instead, plaintiffs assert in conclusory fashion that Defendant AIDA filed the state court action in bad faith and with the intent to deprive plaintiffs of their constitutional rights. Plaintiffs have thus failed to state a § 1983 claim based on malicious abuse of process on which relief can be granted.

### D. § 1985(3)

Plaintiffs also argue that defendants have conspired against them to deprive them of rights or privileges that they enjoy as citizens of the United States. To state a claim under the relevant civil rights statute, 42 U.S.C. § 1985(3), the plaintiff must allege with specificity facts sufficient to show or raise a plausible inference of:

(1) a conspiracy between two or more persons for the purpose of depriving any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law, and

(2) an act by one of the conspirators in furtherance of the object of the conspiracy whereby another person was

 (a) injured, or

 (b) deprived of exercising any right or privilege of a citizen of the United States.

*Girard v. 94th Street and Fifth Ave. Corp.*, 396 F.Supp. 450, 455 (S.D.N.Y.1975), *aff'd* 530 F.2d 66 (2d Cir.1976), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976). In addition, the plaintiff must allege that the conspiracy was motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus." *United Bd. of Carpenters v. Scott*, 463 U.S. 825, 829, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983). *See also Mian*, 7 F.3d at 1088.

According to plaintiffs' complaint and response, Defendant AIDA conspired against plaintiffs in violation of 42 U.S.C. § 1985(3) by participating with non-parties in the creation of a dummy corporation, Beige Plane, Ltd., and the conveyance of the Hotel deed to that corporation for zero monetary consideration, thus depriving plaintiffs, "a racial minority," of their property and subjecting them to financial loss. Defendants argue that the complaint fails to plead sufficiently all the elements of a § 1985(3) conspiracy.

Even if the Court assumes that plaintiffs have succeeded in stating a claim under § 1985(3), it is unclear how the conveyance of the Hotel deed might have harmed them. Plaintiffs allege in their complaint that Defendant AIDA and two other secured credi-

tors purchased the Hotel at public auction in August 1992. The complaint also alleges that Defendant AIDA and the other buyers transferred the Hotel deed to Beige Plane, Ltd. in November, 1992. Plaintiffs describe the creation of Beige Plane, Ltd. and the transfer of the deed to that entity as "deceitful and fraudulent." The Court does not see, however, and the complaint fails to specify, how plaintiffs were harmed by the buyers' decision to transfer their newly-acquired property to any transferee of their choosing and on whatever terms they managed to secure. Once the buyers legally acquired the Hotel deed—and plaintiffs do not challenge the legality of the public auction or its outcome—plaintiffs' legal interest in the Hotel expired, and with it their standing to sue Defendant AIDA for its subsequent sales transactions. Therefore, even assuming that plaintiffs' allegations of conspiracy accord with formal pleading requirements, they have failed to state a claim under § 1985(3) on which they are entitled to relief.

### E. Other Claims

Plaintiffs also assert a variety of claims against defendants involving, *inter alia*, RICO, the Uniform Commercial Code, New York's real property statutes, deceit, misrepresentation, fraud, and tortious interference with contractual relationship. None of the plaintiffs' remaining federal claims are supported by facts sufficient to state a claim on which relief can be granted. Even if the plaintiffs have stated viable state law claims, an issue on which the Court reserves judgment, the Court refuses to exercise supplemental jurisdiction over any of them at this time. At this stage of the litigation, any viable state claims would obviously predominate over viable federal claims.

### III. Conclusion

Plaintiffs have spent a great deal of time researching the law and formulating their arguments. Because of their *pro se* status and their apparently good faith efforts to assemble valid federal claims, the Court will grant them leave to amend their complaint with respect to those causes of action that the Court now dismisses pursuant to Fed.

R.Civ.Pro. 12(b)(6) and 56(c). If they choose to amend their complaint, plaintiffs are advised to consult with this District's *pro se* attorney and to bear in mind Fed.R.Civ.Pro. 8(a)(2), which calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Defendants are reminded that they must comply with plaintiffs' discovery requests in accordance with the pretrial order.

Defendants' 12(b)(6) motion to dismiss is hereby GRANTED with respect to plaintiffs' § 1981 claim, plaintiffs' § 1983 claims based upon municipal policy rather than the conduct of defendants' officials, plaintiffs' § 1983 claim based on abuse of process, and plaintiffs' § 1985(3) conspiracy claim.

Defendants' 56(c) motion for summary judgment is hereby GRANTED with respect to plaintiffs' § 1983 claim based upon the conduct of defendants' officials, if plaintiffs have successfully pled such a claim.

Plaintiffs' § 1982 claim is DISMISSED for lack of subject matter jurisdiction.

Defendants' 12(b)(6) motion is GRANTED with respect to any of plaintiffs' federal claims not previously mentioned in this order.

The Court RESERVES judgment on the issue of whether plaintiffs' state claims withstand defendants' motions.

Plaintiffs have thirty (30) days from the date of this order to file an amended complaint.

**IT IS SO ORDERED.**