Filed 9/18/14  Estate of Johnson CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Estate of EDITH JOHNSON, Deceased. | |
| JOSIENA BROWN, Individually and as Administrator, etc., <br><br> Petitioner and Appellant, <br><br> v. <br><br> MTC FINANCIAL INC., <br><br> Objector and Respondent. | A134733 <br><br> (City & County of San Francisco Super. Ct. No. PES10293632) |
| Estate of EDITH JOHNSON, Deceased. | |
| JOSIENA BROWN, Individually and as Administrator, etc., <br><br> Petitioner and Appellant, <br><br> v. <br><br> FINANCIAL FREEDOM SENIOR FUNDING CORPORATION et al., <br><br> Objectors and Respondents. | A135452 <br><br> (City & County of San Francisco Super. Ct. No. PES10293632) |

1

Estate of EDITH JOHNSON, Deceased.

JOSIENA BROWN, Individually and as
Administrator, etc.,

      Petitioner,

v.

FINANCIAL FREEDOM ACQUISITION,
LLC et al.,

      Objectors and Respondents;

RICHARD A. CANATELLA,

      Objector and Appellant.

A136389

(City & County of San Francisco
Super. Ct. No. PES10293632)

## I.  INTRODUCTION

In this probate matter, appellant Josiena Brown, individually and as administrator of the estate of her mother, Edith Johnson, filed petitions alleging respondents MTC Financial Inc. (MTC), Financial Freedom Senior Funding Corporation (FFSFC), Financial Freedom Acquisition, LLC (FFA) and Mortgage Electronic Registration Systems, Inc. (MERS) engaged in racial discrimination in connection with their efforts to foreclose on real property owned by Johnson's estate.  The trial court sustained, without leave to amend, MTC's demurrer to Brown's second amended petition (SAP).  The court later sustained, without leave to amend, the demurrers of the remaining respondents to Brown's third amended petition (TAP).

Brown filed two appeals, challenging the dismissal of her claims against MTC (No. A134733) and the dismissal of her claims against the other respondents (No. A135452).  In addition, Brown's attorney, Richard Canatella, appealed a trial court order imposing sanctions on him for making a false allegation in the TAP (No. A136389).  We consolidated the three appeals for purposes of oral argument and

2

decision.[1]  We affirm the trial court's dismissal of the SAP (as to MTC) and the TAP (as to the other respondents).  We reverse the sanctions award against Canatella.

## II.  BACKGROUND[2]

Brown is African-American.  Her mother, Johnson, was also African-American.  In 2005, Johnson entered a reverse mortgage secured by real property on Jamestown Avenue in San Francisco (the property).  Pursuant to the applicable note and deed of trust, FFSFC advanced money to Johnson.  The deed of trust provides that, upon Johnson's death, all borrowed amounts would be due and payable.  FFSFC initially held the beneficial interest in the deed of trust and later transferred the beneficial interest to MERS, as nominee for FFSFC.  MERS later transferred the beneficial interest to FFA, which Brown describes as FFSFC's "corporate foreclosure arm."  MTC was a trustee under the deed of trust.

Johnson died on January 1, 2010.  In early 2010, Brown, who was living at the Jamestown Avenue property, received repayment notices and demands from FFSFC, which stated the amount due under the reverse mortgage was nearly $300,000.  During this time period, FFSFC also sent an inspector who inspected the property and obtained financial and other information from Brown and her daughter.  In July 2010, FFSFC issued a notice of intent to foreclose.

Also in July 2010, Brown was appointed administrator of Johnson's estate.  Brown sought to sell the property to avoid a foreclosure.  In August 2010, Brown published notice of a private sale of the property, but she received no offers.

On October 25, 2010, respondents recorded a notice of default.  In January 2011, respondents recorded a notice of trustee's sale, setting the foreclosure sale for February 22, 2011.

---

[1] In No. A136389, appellant Canatella filed a request for judicial notice of the appendices filed in all three appeals.  We deferred consideration of that request until our decision on the merits.  In light of our consolidation of the three appeals, we deny the request for judicial notice as moot.

[2] We take our summary of the underlying facts from Brown's allegations in the SAP and the TAP.

3

Brown sought and obtained temporary injunctive relief (from the superior court and from the federal district court, to which this action was removed in May 2011) preventing the foreclosure sale. After the federal court remanded the case, the trial court (Judge Quidachay) entered an order on September 20, 2011, denying Brown's request for a preliminary injunction and dissolving any temporary restraining order or injunction in effect.

The property was sold at a nonjudicial foreclosure sale on November 1, 2011, for $275,000.01. Brown had scheduled a probate auction sale for December 6, 2011, had received an offer of $228,000, and hoped to receive additional, higher bids.

As we discuss below, in her petitions seeking to prevent (and now seeking redress for) respondents' allegedly wrongful foreclosure sale, Brown alleges respondents conspired to, and did, discriminate against her on the basis of her race. Brown asserts the nonjudicial foreclosure sale and respondents' related actions leading up to the foreclosure (outlined above) were in furtherance of the conspiracy. Brown contends respondents were motivated by racial animus and intentionally discriminated against her.

As noted, the trial court sustained, without leave to amend, MTC's demurrer to the SAP and the demurrers of the remaining respondents to the TAP.[3]

### III. DISCUSSION

**A. The Demurrers**

**1. Standard of Review**

In reviewing whether the trial court erred in sustaining respondents' demurrers without leave to amend, we review the operative petition (the SAP for MTC; the TAP for the other respondents) de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory. (*McCall v. PacifiCare of Cal., Inc.* (2001)

---

[3] The court entered judgments of dismissal as to MTC and FFSFC. Although the court did not enter a separate judgment of dismissal as to FFA and MERS, the court's order sustaining their demurrer without leave to amend also stated the case was dismissed with prejudice. It is appropriate to construe the trial court's order as an appealable order dismissing the case as to FFA and MERS. (See *Hudis v. Crawford* (2005) 125 Cal.App.4th 1586, 1590, fn. 4.)

4

25 Cal.4th 412, 415.) " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

    2.    **Brown's Federal Civil Rights Claims**

In the SAP and the TAP, Brown alleges respondents conspired to, and did, discriminate against her on the basis of her race in violation of federal civil rights and antidiscrimination laws, including title 42 United States Code sections[4] 1981, 1982, 1985 and 3604 (first through third causes of action in the SAP; first through fourth causes of action in the TAP).[5] Brown asserts the nonjudicial foreclosure sale and related actions taken by respondents were in furtherance of the conspiracy. As we will discuss, we conclude Brown's allegations are insufficient to withstand a demurrer.

Brown's principal theory is that respondents, in taking steps toward foreclosure and in conducting the foreclosure sale, were motivated by racial animus and intentionally

---

[4] All undesignated section references are to title 42 of the United States Code.

[5] Brown also asserts claims under California civil rights statutes (Civ. Code, §§ 43, 51, 52.1, fourth cause of action in SAP; Civ. Code, § 52.1, fifth cause of action in TAP), as well as claims for interference with administrative duties and injunctive relief (fifth and sixth causes of action in SAP). In her opening appellate briefs, Brown makes no argument that the trial court's dismissal of these causes of action was erroneous. She therefore has forfeited any such argument. (See *Supervalu, Inc. v. Wexford Underwriting Managers, Inc.* (2009) 175 Cal.App.4th 64, 84, fn. 5.)

discriminated against her.  Even under federal notice pleading standards,[6] "complaints based on civil rights statutes must include specific allegations of facts showing a violation of rights 'instead of a litany of general conclusions that shock but have no meaning.' " (*Waldron v. Rotzler* (N.D.N.Y. 1994) 862 F.Supp. 763, 768 (*Waldron*); accord, *Catsouras, supra,* 181 Cal.App.4th at p. 891 ["mere conclusions" are insufficient to state a claim under federal Civil Rights Act; " '[s]ome particularized facts' " are needed]; *Bach, supra,* 147 Cal.App.3d at p. 564 [same]; *Akhavein v. Argent Mortgage Co.* (N.D.Cal. Jul. 18, 2009, No. 5:09–cv–00634 RMW (RS)) 2009 U.S.Dist. LEXIS 61796, pp. *15–17 (*Akhavein*).)[7]  Accordingly, a plaintiff alleging intentional discrimination in violation of federal civil rights laws must "plead facts which establish that defendants' actions were racially motivated and purposefully discriminatory." (*Waldron, supra,* 862 F.Supp. at p. 768 [§ 1981 claim]; *id.* at p. 769 [§ 1982 claim].)[8] The plaintiff must allege facts supporting the inference of a causal link between the defendant's actions and the plaintiff's race; conclusory allegations are not sufficient. (*Grimes v. Fremont General Corp.* (S.D.N.Y. 2011) 785 F.Supp.2d 269, 296 (*Grimes*) [§§ 1981, 1982]; see *id.* at pp. 289–290, 292, fn. 33 [stating that claim under provisions of federal Fair Housing Act (FHA), including §§ 3604, subd. (b) and 3605, subd. (a), was

---

[6] The court in *Bach v. County of Butte* (1983) 147 Cal.App.3d 554 at pages 560–563 (*Bach*) applied federal law to determine whether a complaint states a cause of action under a provision of the federal Civil Rights Act (§ 1983), although acknowledging that prior courts had assumed that California pleading laws should apply.  (Accord, *Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856, 891 (*Catsouras*) [following *Bach*].)  We follow federal notice pleading requirements, although we do not believe the distinction is dispositive in this case.  Whether state or federal law applies, the outcome in this action would be the same.

[7] The California Rules of Court do not prohibit citation to unpublished federal cases, which may be cited as persuasive authority.  (*Nungaray v. Litton Loan Servicing, LP* (2011) 200 Cal.App.4th 1499, 1501, fn. 2.)

[8] Section 1981 prohibits racial discrimination in the making and enforcement of contracts.  Section 1982 guarantees every United States citizen "the same right . . . as is enjoyed by white citizens . . . to inherit, purchase, lease, sell, hold, and convey real and personal property."

deficient where plaintiffs made only generalized allegations of discriminatory treatment].)

Similarly, to state a section 1985 conspiracy claim, "the plaintiff must allege with specificity facts sufficient to show or raise a plausible inference of:  [¶] (1) a conspiracy between two or more persons for the purpose of depriving any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the law, and [¶] (2) an act by one of the conspirators in furtherance of the object of the conspiracy whereby another person was [¶] (a) injured, or [¶] (b) deprived of exercising any right or privilege of a citizen of the United States." (*Garg v. Albany Indus. Dev. Agency* (N.D.N.Y. 1995) 899 F.Supp. 961, 970 (*Garg*).)  The plaintiff must also allege the "conspiracy was motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus.' " (*Ibid.*; *Gorokhovsky v. City of New York* (S.D.N.Y. May 19, 2011, No. 10 Civ. 8848 (LBS)) 2011 U.S.Dist. LEXIS 54941, p. \*39, aff'd in part and rev'd in part on another point in *Gorokhovsky v. New York City Housing Authority* (2d Cir. 2014) 552 Fed.Appx. 100.)[9]  The allegations of conspiracy must be specific and nonconclusory.  (*Taylor v. Mitzel* (1978) 82 Cal.App.3d 665, 673–675 (*Taylor*); *Grimes, supra,* 785 F.Supp.2d at p. 297.)

The SAP and the TAP do not contain sufficient allegations suggesting respondents were involved in any intentional discrimination or conspiracy so as to be liable under federal civil rights laws.  The SAP and the TAP just recount Johnson's entry into the reverse mortgage transaction and the events leading to the nonjudicial foreclosure sale (beginning with a January 2010 repayment notice), and make the conclusory allegations that all respondents (1)  were somehow motivated by a "racially discriminatory animus," (2) intentionally discriminated against Brown, and (3) conspired to deprive Brown of her

---

[9] Section 1985, subdivision (3) provides for the recovery of damages "[i]f two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, . . . or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . . ."

7

inheritance because of her race.  But there are no factual allegations to support a conclusion the respondents acted with racial animus.  (See *Akhavein, supra,* 2009 U.S.Dist. LEXIS 61796 at p. *17 [federal and California civil rights claims arising out of mortgage loan transaction failed where each claim offered "a conclusory allegation of discrimination, based on any number of criteria, with no factual substantiation to ground the accusation"]; *Grimes, supra,* 785 F.Supp.2d at pp. 296–297 [allegations of discrimination in mortgage lending were insufficiently specific to state causes of action under federal civil rights statutes].)  Nor are there any facts as to which respondents conspired and how they did so.  Instead, the conspiracy allegations are nonspecific and conclusory, and therefore are insufficient to state a cause of action for violation of section 1985, subdivision (3).  (*Taylor, supra,* 82 Cal.App.3d at pp. 673–675; *Grimes, supra,* 785 F.Supp.2d at pp. 297–298; *Garg, supra,* 899 F.Supp. at p. 970.)  Finally, the SAP and the TAP assert generally that the respondents treat non-African-American successors-in-interest more favorably than they did Brown, but without alleging any specific facts supporting these assertions.  (See *Grimes, supra,* 785 F.Supp.2d at p. 292, fn. 33 [plaintiffs alleging discriminatory lending failed to plead that "any specific similarly-situated non-African American applicant received a better loan"]; *id.* at p. 296 [plaintiff failed to provide examples showing defendants "targeted" discriminatory lending activities against minorities].)

A defendant's effort to collect amounts owed to it, without more, does not establish or support a plausible inference of intentional discrimination.  In *Carpenters Health and Welfare Fund of Philadelphia v. Kia Enterprises Inc.* (E.D.Pa. Jul. 16, 2009, No. 09–116) 2009 U.S.Dist. LEXIS 61320, at page *2 (*Carpenters*), the plaintiffs (a labor union and affiliated union funds, pension plans and individuals) sued the defendant (Kia), an African-American-owned business, to collect payments allegedly owed to plaintiffs under a collective bargaining agreement (CBA).  Kia filed a counterclaim, alleging that, in seeking to collect the payments, the plaintiffs discriminated against Kia in violation of section 1981.  (*Id.* at pp. *2–3.)  The court held Kia's allegations that the union had a longstanding pattern and practice of discriminating against minorities and

minority-owned businesses, as well as allegations that the plaintiffs' actions were intentional and motivated by racial animus and a desire to exclude minorities and minority-owned businesses from the construction industry, were legal conclusions that were not entitled to be assumed to be true. (*Id.* at pp. *8–9; see *Zelig v. County of Los Angeles, supra,* 27 Cal.4th at p. 1126 [on demurrer, court does not assume truth of "contentions, deductions or conclusions of fact or law"].)  As to the counterclaim's specific factual allegations about actions the plaintiffs took to collect the payments from Kia (including taking steps to make a claim against Kia's performance bond, and demanding to audit Kia's books and records), the *Carpenters* court stated:  "These actions are entirely consistent with a lawful attempt by the plaintiffs to collect unpaid CBA obligations that they are owed.  By themselves, these allegations are 'not only compatible with, but more likely explained by,' lawful behavior and therefore cannot 'plausibly suggest' actionable wrongdoing." (*Carpenters, supra,* 2009 U.S.Dist. LEXIS 61320 at p. *9.)  Finally, Kia's allegation, on information and belief, that the plaintiffs did not make similar efforts to collect unpaid CBA obligations from non-minority-owned businesses, in the absence of more specific allegations identifying particular instances of disparate treatment, were legal conclusions that could not be taken as true.  (*Ibid.*)

Similarly, here, the actions respondents took to foreclose on the property after Johnson's death do not plausibly suggest intentional discrimination, because those actions are compatible with, and more likely explained by, lawful conduct, i.e., efforts to collect the amounts secured by the deed of trust entered into by Johnson.  (*Carpenters, supra,* 2009 U.S.Dist. LEXIS 61320 at p. *9.)  The fact Brown sought to sell the property at a probate auction (as an alternative to foreclosure) does not show respondents' efforts to foreclose were improper and does not support an inference that respondents engaged in intentional discrimination.  We thus reject Brown's argument that " 'no other reason than race' " explains respondents' efforts to foreclose.  Finally, Brown's general allegations that respondents would not or do not make similar efforts to collect from non-African-American successors-in-interest, without more specific allegations identifying particular

9

instances of disparate treatment, are legal conclusions that cannot be taken as true. (*Id.* at p. *10.)

In her reply briefs, Brown cites *Swierkiewicz v. Sorema N. A.* (2002) 534 U.S. 506, at pages 508, 510–513 (*Swierkiewicz*), in which the United States Supreme Court held that, under rule 8(a) of the Federal Rules of Civil Procedure, a plaintiff in an employment discrimination case need not allege at the pleading stage all facts necessary to establish a "prima facie case" of discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792. The prima facie case is "an evidentiary standard, not a pleading requirement." (*Swierkiewicz, supra,* 534 U.S. at p. 510; see *Lindsey v. Yates* (6th Cir. 2007) 498 F.3d 434, 439–440 [*Swierkiewicz* applies to housing discrimination claims]; see also *Barber v. Rancho Mortgage & Investment Corp.* (1994) 26 Cal.App.4th 1819, 1833 [discussing prima facie case for discrimination in sale or rental of housing under § 1982].) But the United States Supreme Court has also held that, under rule 8(a) of the Federal Rules of Civil Procedure, to survive a motion to dismiss, a discrimination complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' "[10] (*Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678; see *Carpenters, supra,* 2009 U.S.Dist. LEXIS 61320 at pp. *7–8.) Accordingly, as we have noted above, a plaintiff claiming intentional discrimination must allege facts supporting the inference of a causal link between the defendant's actions and the plaintiff's race; conclusory allegations are not sufficient. (*Grimes, supra,* 785 F.Supp.2d at p. 296.) The SAP and the TAP do not meet this standard.

In addition to alleging intentional discrimination, Brown argues briefly that she has stated a claim for disparate impact discrimination under provisions of the federal FHA (§ 3601 et seq.).[11] We disagree. To prevail on a disparate impact theory, a plaintiff

---

[10] Brown thus is incorrect in suggesting (in her reply briefs) that she only needed to assert respondents' actions were racially motivated. Instead, as Brown acknowledges, factual allegations, rather than mere conclusions, are required.

[11] Brown cites section 3604, subdivision (b), which provides that "it shall be unlawful [¶] . . . [¶] . . . [t]o discriminate against any person in the terms, conditions, or

10

must show a facially neutral housing practice or policy has a disproportionate adverse effect on members of a protected class. (See *Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1420–1421 (*Sisemore*); *Cabrera v. Alvarez* (N.D.Cal. 2013) 977 F.Supp.2d 969, 976.) For example, in *Sisemore*, the plaintiffs stated a viable disparate impact claim by alleging a mortgage lender's policy of refusing to lend to family home day care operators had a disproportionate adverse effect on protected classes (women and families with children). (*Sisemore, supra,* 151 Cal.App.4th at pp. 1420–1421.) Here, in contrast, Brown has not identified a facially neutral practice or policy employed by respondents. Instead, she just describes the respondents' specific decisions affecting the property at issue in this case; Brown refers to the "facially neutral decisions" to enter the reverse mortgage transaction with Johnson and later to foreclose pursuant to the deed of trust. As to the impact on a protected class, Brown suggests the respondents' decisions in her case had a negative impact on her as an African-American and on the neighborhood where the property is located (by removing an African-American family from the neighborhood). But Brown has not alleged facts showing comparable treatment of similarly situated members of the protected class, or facts supporting an inference that respondents' conduct has had a disproportionately adverse impact on members of the protected class. (See *Cabrera v. Alvarez, supra,* 977 F.Supp.2d at p. 976.)

For the foregoing reasons, we conclude the trial court correctly sustained, without leave to amend, respondents' demurrers to Brown's federal civil rights causes of action, including her claims under sections 1981, 1982, 1985, and the FHA (§ 3601 et seq.) (the

---

privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race . . . ." Brown also quotes from section 3605, subdivision (a), which provides that "[i]t shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person . . . in the terms or conditions of such a transaction, because of race . . . ." A " 'residential real estate-related transaction' " means "(1) [t]he making or purchasing of loans or providing other financial assistance—[¶] (A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or [¶] (B) secured by residential real estate[] [or] (2) [¶] [t]he selling, brokering, or appraising of residential real property." (§ 3605, subd. (b).)

11

first through third causes of action in the SAP, and the first through fourth causes of action in the TAP).[12]  Because we conclude Brown's federal civil rights claims are conclusory and insufficiently specific, we need not address respondents' arguments that these claims fail for other reasons.

### 3.    Wrongful Foreclosure

Brown suggests she has stated, or could amend to state, a cause of action for wrongful foreclosure based on respondents' failure to comply with regulations promulgated by the United States Department of Housing and Urban Development (HUD) that apply to reverse mortgage lenders.  In particular, Brown contends respondents did not comply with title 24 Code of Federal Regulations part 206.125(b), which requires a mortgagee to obtain an appraisal of the property "no later than 15 days before a foreclosure sale."  We conclude respondents' alleged violation of HUD regulations provides no basis for Brown to assert a cause of action for wrongful foreclosure.

In *Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250 at pages 1255, 1277–1278 (*Pfeifer*), cited by Brown, our colleagues in Division Two of this court concluded that, where the applicable deed of trust incorporated HUD regulatory requirements, the lenders had to comply with the regulations before commencing a nonjudicial foreclosure.  But the relief available to the borrowers is limited.  The *Pfeifer* court stated it agreed "with those courts that refuse to permit any private right of action for failure to comply with the HUD regulations and the Pfeifers cannot seek damages based on their wrongful foreclosure action."  (*Id.* at pp. 1255, 1269–1270, 1282 & fn. 17.) The *Pfeifer* court also agreed with "courts distinguishing an offensive action from a defensive action"; the Pfeifers therefore could seek to enjoin the lenders from proceeding

---

[12] Brown, who has now amended her petition three times, presents no argument as to how she could further amend her federal civil rights claims to state a cause of action. (See *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1491 [plaintiff has appellate burden to specify how she could amend to state cause of action].)

with a nonjudicial foreclosure sale (and could seek associated declaratory relief) based on the lenders' failure to comply with HUD servicing requirements. (*Id.* at pp. 1255, 1281.)

*Pfeifer* does not assist Brown. Here, the nonjudicial foreclosure sale has occurred. Accordingly, even assuming the deed of trust in the present case incorporates the HUD regulations that Brown contends respondents violated (a question we need not address), Brown cannot rely on the regulations as the basis for a "defensive" action to prevent respondents from proceeding with a nonjudicial foreclosure sale. (See *Pfeifer, supra,* 211 Cal.App.4th at pp. 1255, 1281.) And, Brown cannot bring an "offensive action" seeking damages based on respondents' alleged noncompliance with the regulations. (*Id.* at pp. 1255, 1269–1270, 1282 & fn. 17.) Although Brown does not contend she can seek damages, she suggests that, under *Pfeifer*, she can rely on the HUD regulations as a basis for seeking "equitable relief," such as imposing a " 'constructive trust' " on, or requiring the respondents to " 'disgorg[e],' " the proceeds of the foreclosure sale. We disagree. As noted, the *Pfeifer* court held a borrower has no right to bring any "offensive" action to enforce HUD regulations, and the court only authorized borrowers to rely on the regulations "defensive[ly]," to prevent a foreclosure sale and to obtain associated declaratory relief. (*Id.* at pp. 1255, 1269–1270, 1277–1278, 1281, 1282 & fn. 17.) We decline to extend *Pfeifer* to permit a borrower to rely on HUD regulations to seek monetary relief based on a completed nonjudicial foreclosure sale.

**B.      Sanctions**

**1.      Background**

After demurring to the TAP, FFA and MERS filed a motion under Code of Civil Procedure section 128.7, seeking sanctions against Brown's counsel, Richard Canatella, for filing the TAP. FFA and MERS argued the TAP lacked legal and factual support and included false factual allegations, including an allegation (which we discuss in more detail below) that FFA and MERS had failed to obtain a pre-foreclosure appraisal of the property as required by HUD regulations. FFA and MERS sought an award of $11,631 in attorney fees incurred in responding to the TAP and in making the sanctions motion.

13

In his brief opposing the sanctions motion, Canatella argued FFA's and MERS's motion was itself frivolous and sanctionable.

At the May 15, 2012 hearing on FFA's and MERS's sanctions motion, the trial court stated its "leaning" was to deny the motion, because, although the court had by then sustained the demurrers to the TAP without leave to amend, the court was not persuaded the TAP was "totally meritless" so as to justify sanctions. Counsel for FFA and MERS responded by focusing on the contention that the TAP (signed by Canatella on January 6, 2012) included a specific false factual allegation, i.e., the allegation that respondents had not obtained the appraisal required by HUD. Counsel for FFA and MERS stated that, although he had served Canatella with the sanctions motion papers (which included a copy of an appraisal) on February 27, 2012, Canatella did not withdraw the offending allegation; instead, he had argued orally at the March 27, 2012 hearing on the demurrers that he had not received an appraisal.

The appraisal report submitted by FFA and MERS is dated October 24, 2011, i.e., seven days before the November 1, 2011 foreclosure sale.

On June 13, 2012, the court entered an order sanctioning Canatella under Code of Civil Procedure section 128.7. The court concluded the allegation in the TAP about the lack of an appraisal was false, and Canatella failed to withdraw the allegation after receiving a copy of the appraisal, but instead, at the March 27, 2012 demurrer hearing, "reiterated the false allegation that 'we never received an appraise value in this case.' " The court ordered Canatella and his law firm to pay, as a sanction, $7,290 in attorney fees to FFA. The court did not address Canatella's argument that counsel for FFA and MERS should be sanctioned.

Canatella filed a motion to vacate the sanctions award and for a new trial, which the trial court denied on August 16, 2012. Canatella filed a notice of appeal, stating he was appealing (1) the order awarding sanctions, (2) the court's failure to impose sanctions on counsel for FFA and MERS, and (3) the order denying his motion to vacate and for a new trial.

## 2.    Analysis

Code of Civil Procedure section 128.7, subdivision (b) provides in part that, "[b]y presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, petition, written notice of motion, or other similar paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met: [¶] . . . [¶]  (3) *The allegations and other factual contentions have evidentiary support* or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."  (Italics added.)  Code of Civil Procedure section 128.7, subdivision (c) authorizes sanctions for violations of Code of Civil Procedure section 128.7, subdivision (b).  We review a trial court's award of sanctions under Code of Civil Procedure section 128.7 for abuse of discretion.  (*Burkle v. Burkle* (2006) 144 Cal.App.4th 387, 399.)

We conclude the trial court abused its discretion in awarding sanctions.  The appraisal produced by FFA and MERS did not show the disputed factual allegation in the TAP about the appraisal was false or lacked evidentiary support.

The TAP's allegations about a pre-foreclosure appraisal refer to HUD regulations and related materials specifying a reverse mortgage lender must conduct an appraisal *no later than* 15 days before a foreclosure sale.  Title 24 Code of Federal Regulations part 206.125(b) specifies:  "(b) Appraisal.  The mortgagee shall obtain an appraisal of the property no later than 30 days after the mortgagor is notified that the mortgage is due and payable, or no later than 30 days after the mortgagee becomes aware of the mortgagor's death, or upon the mortgagor's request in connection with a pending sale.  *The property shall be appraised no later than 15 days before a foreclosure sale. . . .*"  (Italics added.)  A set of frequently asked questions (FAQs) prepared by HUD (which FFA and MERS submitted to the trial court in connection with the sanctions motion) notes this requirement.  Question 24 of the FAQs states:  "**24.  When is a mortgagee required to obtain appraisals?  New 1/22/2009**  [¶] Regulations at [24 Code of Federal Regulations part] 206.125(b) state the mortgagee shall obtain an appraisal of the property no later than

15

30 days after the mortgagor is notified that the mortgage is due and payable, or no later than 30 days after the mortgagee becomes aware of the mortgagor's death, or upon the mortgagor's request in connection with a pending sale. *The property shall be appraised no later than 15 days before a foreclosure sale*." (Italics added.)

Canatella argues he reasonably concluded and alleged that respondents had not complied with this regulatory requirement. We agree. The relevant paragraphs of the TAP refer to the above regulation and FAQ answer, but incorrectly paraphrase them as requiring an appraisal "within" 15 days of a foreclosure sale.[13] Paragraph 7 of the TAP states: "Petitioner is informed and believes and alleges that the sale was conducted without an appraisal made within 15 days of November 1, 2011. See Department of Housing and Urban Development (HUD) HECM Servicing FAQ's no. 24." (Some bolding omitted.) Paragraph 39 of the TAP repeats this allegation and cites the same FAQ response. Finally, paragraph 46 of the TAP states: "Petitioner is informed and believes and alleges that respondents knew they were in violation of HUD regulations for selling the property at a foreclosure sale without an appraisal made within 15 days of the November 1 sale as required under [24 C.F.R. part] 206.125(b), . . ."[14]

Fairly construed, the above paragraphs of the TAP (although poorly worded) allege that respondents did not comply with the cited HUD regulatory requirements governing when an appraisal must occur. As noted, the applicable regulation requires an appraisal no later than 15 days before a foreclosure sale. (24 C.F.R. § 206.125(b); see Dept. of Housing & Urban Development, HECM Servicing Frequently Asked Questions (FAQs), revised 11/16/2011, No. 24.) FFA's and MERS's submission to the trial court of an appraisal conducted on or about October 24, 2011 (just seven days before the November 1, 2011 foreclosure sale) did not establish the allegations in the above

---

[13] In his reply brief on appeal, Canatella notes the TAP should have used the phrase "no[] later than," instead of the word "within."

[14] In their sanctions motion, FFA and MERS contended the allegations in paragraphs 7 and 46 of the TAP lacked evidentiary support. In its order awarding sanctions, the trial court cited only the allegation in paragraph 7 of the TAP.

16

paragraphs of the TAP were false or lacked evidentiary support.  (See Code Civ. Proc., § 128.7, subd. (b)(3).)  Canatella therefore did not violate Code of Civil Procedure section 128.7 by including the disputed allegations in the TAP, or by "later advocating" those allegations at the March 27, 2012 hearing.  (See Code Civ. Proc., § 128.7, subd. (b).)

To the extent Canatella went further at the March 27, 2012 hearing, such as by stating he had never received an appraisal (although FFA and MERS had by then served him with the sanctions motion papers, which included a copy of the October 24, 2011 appraisal), his oral statements provide no independent basis for sanctions under Code of Civil Procedure section 128.7.  (See *Trans-Action Commercial Investors, Ltd. v. Firmaterr, Inc.* (1997) 60 Cal.App.4th 352, 368–369 [Code Civ. Proc., § 128.7 did not authorize sanctions for oral misconduct].)  Moreover, a sanctions motion under Code of Civil Procedure section 128.7 must "describe the specific conduct alleged to violate [Code of Civil Procedure section 128.7, subdivision (b)]."  (Code Civ. Proc., § 128.7, subd. (c)(1).)  FFA's and MERS's sanctions motion (which was signed on February 22, 2012 and served on February 27, 2012) could not have, and did not, describe Canatella's oral statements at the March 27, 2012 hearing and allege that those statements violated Code of Civil Procedure section 128.7, subdivision (b).

For the foregoing reasons, we reverse the trial court's June 13, 2012 order awarding sanctions against Canatella.[15]  We dismiss as moot the portion of Canatella's appeal challenging the court's August 16, 2012 order denying Canatella's motion for a new trial and to vacate the sanctions award.

Finally, Canatella asks that we direct the trial court, on remand, to address his request for sanctions against counsel for FFA and MERS.  We decline Canatella's

---

[15] FFA and MERS filed a motion in this court seeking sanctions against Canatella and his law firm on the ground Canatella's appeal of the trial court's sanctions award is frivolous.  We deferred consideration of the motion to the decision of the appeal on the merits.  Because we have concluded Canatella's appeal has merit, we deny FFA's and MERS's motion for appellate sanctions.

17

request.  In his trial court brief in opposition to the sanctions motion filed by FFA and MERS, Canatella argued the motion was frivolous and sanctionable under Code of Civil Procedure section 128.7, subdivision (h).  That subdivision provides:  "A motion for sanctions brought by a party or a party's attorney primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, shall itself be subject to a *motion for sanctions*.  It is the intent of the Legislature that courts shall vigorously use its sanctions authority to deter that improper conduct or comparable conduct by others similarly situated."  (Code Civ. Proc., § 128.7, subd. (h), italics added.)  Code of Civil Procedure section 128.7, subdivision (c)(1) specifies the manner by which a motion for sanctions pursuant to section 128.7 may be filed.  (See *Day v. Collingwood* (2006) 144 Cal.App.4th 1116, 1130.)  Such a motion must be "made separately from other motions or requests," and must be served 21 days before it is filed with the court.  (Code Civ. Proc., § 128.7, subd. (c)(1).)  Canatella did not make a separate motion for sanctions, and did not serve his request for sanctions 21 days before filing it.  Instead, he just included a request for sanctions in his opposition to the sanctions motion filed by FFA and MERS.  The trial court did not err by failing to rule on, or by implicitly denying, this request.

## IV.  DISPOSITION

In No. A134733, the judgment of dismissal in favor of MTC is affirmed.  MTC shall recover its costs on appeal.

In No. A135452, the judgment of dismissal in favor of FFSFC is affirmed.  FFSFC shall recover its costs on appeal.

Also in No. A135452, the order dismissing the action as to FFA and MERS is affirmed.  FFA and MERS shall recover their costs on appeal.

In No. A136389, the trial court's June 13, 2012 order imposing sanctions against Canatella is reversed.  Canatella's appeal of the court's August 16, 2012 order denying Canatella's motion for a new trial and to vacate the sanctions award is dismissed as moot.  The motion of FFA and MERS for an award of appellate sanctions is denied.  The parties shall bear their own costs on appeal.

18

                                                _____

                                                McGuiness, P.J.

We concur:


_____

Siggins, J.


_____

Jenkins, J.